Slocum et al. v. Slocum et al.

SLOCUM ET AL. v. SLOCUM ET AL.

| 70 | 259 |
| 96 | 717 |

1. **Tax Sale and Deed**: ASSESSMENT: PRESUMPTION FROM DEED NOT OVERCOME. A tax deed executed in 1871, upon a sale made in 1867 for the taxes of 1866, is *prima facie* evidence that the land was assessed for 1866, and where that presumption is confirmed by the tax list for 1866, showing a description and valuation of the land, together with the taxes due thereon, *held* that the claim that there was no assessment for that year could not be established by the somewhat equivocal testimony of the auditor, given nearly twenty years later, to the effect that he had not been able to find the assessment book for 1866 in his office. (*Early v. Whittingham*, 43 Iowa, 162, distinguished, and *Easton v. Savery*, 44 Iowa, 654, cited.)

2. ———: REGULARITY: TIME OF SALE: PRESUMPTION FROM DEED: REVISION, § 784. A tax deed made under § 784 of the Revision, pursuant to a sale in fact by the treasurer, is conclusive evidence that the property was advertised and the sale conducted in the manner provided by law; and in an action to set aside such a deed it was not competent to introduce evidence to contradict a recital in the deed that the sale was an adjourned one, for the purpose of showing that it was not made at a lawful time.

3. ———: IRREGULARITIES: SALE IN FACT: ERRORS CURED BY DEED. Where a few days before an adjourned tax sale a purchaser left his bid with the treasurer, agreeing to take the lands on the list for the amount of the taxes, interest and costs; and at the hour advertised to begin the sale the treasurer went through the list and struck off the different tracts to such purchaser as "sold" for the amount of taxes, interest and costs, and so checked the tracts on the printed list in the paper in which they were advertised—there being no other bidders, and afterwards made out certificates accordingly, and received into the county treasury the money arising therefrom, *held* that there was a sale in fact, and that the deed given pursuant thereto was conclusive evidence that it was conducted in the manner required by law. (*Leavitt v. Watson*, 37 Iowa, 93, followed. See opinion for cases distinguished.)

4. ———: TAXES PAID ON DAY OF SALE: PRESUMPTION. Where lands were

sold for taxes December 9, 1867, and that fact was recited in the tax deed made pursuant to the sale, but it appeared from the tax list that the taxes were paid on that day, but there was no evidence tending to show when or by whom the entry of payment was made, *held* that it was fair to presume that the taxes were marked "paid" after the sale, and that the payment was made with money derived therefrom.

*Appeal from O'Brien District Court.*

FRIDAY, DECEMBER, 10.

ACTION to quiet the title to real estate. The petition states that the plaintiffs are the owners of the real estate in controversy, and that the defendants make some claim thereto. The defendants deny the material allegations in the petition, and plead that they are the owners of the land, and that their right is based on a tax deed, executed in 1871, in pursuance of a sale of the land made on December 9, 1867, for the delinquent taxes of 1866; that said lands were subject to taxation for said year, and were duly assessed for the purpose of taxation; that taxes were duly levied thereon; that said land was duly advertised for sale, and sold for non-payment of taxes, at the time above stated, to D. M. Inman, to whom a certificate of sale was issued, which was afterwards assigned to one of the defendants. To the answer the plaintiffs replied, and denied "that there was any sale of the land    *    *    *    for the alleged taxes of 1866;" and they denied "that the taxes were legally levied upon said land for 1866." In an amendment to the reply the plaintiffs denied that on "December 9, 1867,    *    *    *    the taxes of 1866 were unpaid and delinquent." · The court found that the lands had been duly assessed, and taxes duly levied for 1866; that "the sale made of said land for the delinquent taxes for 1866, on the ninth day of December, 1867, was made when the treasurer had no jurisdiction or authority to make such sale;" and a decree was entered declaring the deed void; but the court decreed that the plaintiffs should

pay the defendants a certain sum of money for taxes paid by them since the sale. Both parties appeal.

*Joy, Wright & Hudson,* for appellants.

*J. H. & C. M. Swan,* for appellees.

SEEVERS, J.—I. It is insisted that the land was not assessed for 1866. It is conceded that the deed is *prima facie* evidence that it was. The burden there-fore, is on the plaintiffs to show that it was not. It will be observed that the plaintiffs do not affirm-atively plead that there was no assessment, but sim-ply deny that there was one. We suppose this form of pleading was adopted because the defendants had unnecessarily pleaded that there was an assessment. The plaintiffs, how-ever, assumed the burden in this respect, and the trial below seems to have been based on the theory that whether there was an assessment was an issue in the case properly pleaded. It is proper, therefore, that the case should be tried here as it was below.

*(margin note: 1. TAX sale and deed: assessment: presumption from deed not over-come.)*

To establish the fact that there was no assessment, the plaintiffs introduced the county auditor as a witness. He testified that he had been "county auditor for two years," and had been connected with the county offices for eight years," but in what capacity does not appear. He further testifies that he has never been able to find the assessment book of 1865 and 1866 in his office. "My recollection is that the 1869 assessment book is in my office, and some prior to 1866. I am not positive whether there is any assessment book in my office for 1865. I don't believe I do recollect seeing any. I have searched, generally, for all assessor's books I could find in the office, and gathered them up in some systematic shape. I have made a complete examination, of late, to ascertain what assessment books are in the office. * * * I don't know as to the carefulness of it. * * * Found some in the ante-room of

the office. They were just piled   *   *   *   on shelves. I am not able to state for what years I have assessment books. There was the year 1866, that I was under the impression I had not in the office. It had been called for a time or two, and I was not able to find it. I would not be positive whether 1865 assessment book is in my office or not, but I think not. I could not state whether the 1864 assessment books were in my office or not. I suppose there are some of these early records that are gone; at least, I have not been able to find all since I have been auditor. It may be that a part of the 1866 assessment book is in my office, but I have never found it. I have made no examination lately. I have no knowledge that these assessment books which I say I suppose have been lost ever existed. I have never found anything to show that they ever existed."

It further appears that there was a "tax-list" for the year 1866, and that the land in controversy appears thereon, with a valuation affixed thereto, together with the amount of tax due thereon. This tax-list aids the presumption which arises because of the execution of the deed, and it seems to us that the evidence of the auditor does not show that there was no assessment made in 1866. It is true that he is able to find no assessment book for that year, but, as a whole, his evidence is exceedingly uncertain in this respect. The search hardly seems to have been as thorough as it might have been. Then, it must be remembered that, while the assessment books should be kept as records in the auditor's office, yet, when the tax-list is made out therefrom, they became of little importance. Then, again, the assessment, if made at all, was made nearly twenty years prior to the trial below. Materially aided as the deed is by the tax-list, we do not think the presumption that must be indulged under the statute by reason of its execution has been overcome. This case is clearly distinguishable from *Early v. Whittingham*, 44 Iowa, 162, and is similar, at least, to *Easton v. Savery*, 44 Iowa, 654.

II.   It will be observed that it is not pleaded that the sale was in any respect fraudulent, and therefore we are not required to consider such question.   The plaintiffs, as they were bound to do, assumed the burden of proving that the land had not been sold for the non-payment of the taxes of 1866.

2. —— : regularity; time of sale : presumption from deed: revision § 784.

If the negative averment in the reply be regarded as presenting any issue as to the sale, we think it must be construed as presenting the issue that there was no sale in fact, and not that it was informal, irregular or fraudulent.   It is recited in the tax deed that "the treasurer of said county did, on December 9, 1867, by virtue of authority in him vested by law, at the adjourned sale begun and publicly held on the first Monday in December, 1867, sell the property in controversy to D. W. Inman."   The statute in force at that time provided that the deed is conclusive evidence that the property was advertised and the sale conducted in the manner required by law.   Revision, § 784. .

It has been held that if there has been " a *bona fide* sale, in substance or in fact, the tax deed is conclusive evidence that it was done at the proper time and manner; these being merely directory, and not fundamental" or jurisdictional. *Phelps v. Meade,* 41 Iowa, 470.   In *Clark v. Thompson,* 37 Iowa, 536, the certificate showed that several tracts of land were sold together, but the deed contradicted the certificate, and it was held that, as this pertained to the manner of the sale, the deed was conclusive evidence of such fact, and in *Shawler v. Johnson,* 52 Iowa, 472, it was held that the time when the sale was made related to the manner of making it, and therefore the deed was conclusive evidence that the law had been complied with in this respect.

The plaintiffs introduced evidence tending to show that no sale was advertised to be held on the first Monday of October, and that the sale in question was not an adjourned sale, but that it was advertised to take place at the time it did, in December; but under the statute and the foregoing

decisions the deed is conclusive evidence that the sale was made at a proper and lawful time.    It was not, therefore, competent to introduce evidence to contradict the deed, or the fact as to which it is conclusive evidence.

The plaintiffs introduced as a witness the deputy treasurer who conducted the sale, and he testified: "I held what I supposed at the time of the sale to be a sale.    I took a copy of the paper in which the delinquent list was published, and checked off the parcels of land published for sale to certain parties.    I checked the lands to D. W. Inman.    I don't remember that I checked any to any one else.    *     *     *     I took the list, and checked off [the land in controversy] as 'sold' to D. W. Inman.    *     *     *     I think I spoke to him a day or two before the sale about his purchasing the lands.    *

*     *     He assented, and was to take the lands for the amount of the taxes, interest and costs; and he left the bid with me to take the list.    When the ninth of December arrived, I believe I checked off the land to him in pencil on the list.    I commenced it at ten o'clock, the time mentioned in the notice; and at that time I went through the list, and struck the different tracts to D. W. Inman as 'sold' for the amount of taxes, interest and costs.    *     *     * I don't remember of any other bidders personally."    Certificates of the purchase were afterwards made out to Inman, and the money produced by the sale paid into the county treasury.    That the sale was irregular it may be conceded; but whatever was done was done at the proper time and place, and in a public manner,—at least the evidence does not show to the contrary.

The manner of making this sale was not more irregular than in *Leavitt v. Watson*, 37 Iowa, 93.    In fact, there is considerable similarity between them, and we think that, in substance and in fact, there is no difference.    Therefore, following that case, we must hold there was a sale in fact; and

*Margin note: 3. ——: irregularities: sale in fact: errors cured by deed.*

that the deed is conclusive evidence that it was made in the manner provided by law.

Counsel for the plaintiff cite and rely on *Butler v. Delano*, 42 Iowa, 350. It is sufficient to say, in relation thereto, that the court found that the sale was fraudulent. In *Chandler v. Keeler*, 46 Iowa, 596, the sale was private, and not public. In *Miller v. Corbin*, 46 Iowa, 150, it was found by the court, under the evidence, which is probably not fully set out, that the sale was not publicly made; and, as it follows *Butler v. Delano*, it is probable that fraud was pleaded, although this does appear in the opinion. *Thompson v. Ware*, 43 Iowa, 455, is also distinguishable.

III. It is insisted by the plaintiffs that the taxes were paid prior to the sale. To establish this fact, they introduced in evidence the tax-list, which, as to the lands in controversy, is as follows:

*4. ——: taxes paid on day of sale: presumption.*

## TAXES FOR 1866.

| NAME OF OWNER. | PART OF SECTION. | SEC- TION. | TP. | R. | ACR. | VAL. | NAME OF TOWN. |
|---|---|---|---|---|---|---|---|
| D. W. Inman... ..... | N. E. ¼ S. E. ¼ | 21 | 96 | 41 | 40 | $80 | Inman. |
| D. W. Inman......... | S. E. ¼ | 21 | 96 | 41 | 40 | 80 | Inman. |

| STATE. | CO. | SCH'L. | BRIDGE. | ROAD. | CON. | BOND. | B'TY. | T. TAX | REMARKS. |
|---|---|---|---|---|---|---|---|---|---|
| 20 | 32 | 16 | 24 | 24 | 16 | 32 | 32 | $1 96 | Paid Dec. 9, '67. |
| 20 | 32 | 16 | 24 | 24 | 16 | 32 | 32 | 1 96 | Paid Dec. 9, '67. |

If the foregoing proves anything, it establishes that the taxes were paid on December 9, 1867, and this is the same day the lands were purchased at the tax sale by Inman. Therefore we think the probability is that the taxes were paid by the sale of the lands. This thought is somewhat strengthened by the fact that Inman appears to be the owner of the land. But he was not, for it then, in fact, belonged to W.

A. Macy. It seems to be improbable that the treasurer would receive taxes on a given piece of land, and mark them "paid" on the books, and then, on the same day, sell the land for non-payment of taxes. As there is no evidence tending to show when or by whom the entry of payment was made, we, under the circumstances, think the presumption should be indulged that the taxes were marked "paid" after the sale, and that the payment was made with money derived from the sale.

For the reason stated, we think the court erred in decreeing that the tax deed was void. On the defendant's appeal the judgment of the district court is

REVERSED.