96  713
108  216

S. F. LATHROP v. JOHN IRWIN, Appellant, JAMES L.
LOMBARD, A. O. CARPENTER AND C. W.
INMAN, Defendants and Appellees.

**Tax Deed: LACHES.** Revision, 739, provides that the board shall, after
assessor's book is returned assess land if the assessor failed to do
so. Section 747 requires the clerk of the board to do this if the
board fails; section 752 that the treasurer shall cure failure of the
clerk to act, and if the treasurer fail, section 755 requires the owner
to assess. The holder of a tax deed paid taxes and made improve-
ments for twenty years and while claimant paid no taxes. *Held*,
it is presumed that said officers did their duty and claimant will
not be allowed, after this lapse of time, to overcome that pre-
sumption and presumptions created by the deed by simply show-
ing that no valuation was placed upon the land in the assessor's
books for the years for the taxes of which the land was sold.

*Appeal from O'Brien District Court.*—HON. S. M. LADD,
Judge.

SATURDAY, JANUARY 25, 1896.

Suit in equity to quiet title to certain lands in
O'Brien county. The plaintiff is the holder of a tax
deed to the lands in dispute, issued to him by the
treasurer of the county in the year 1875. The appel-
lant, Irwin, is the owner of the patent title, and claims
that the tax deed is defective, because the lands were
never assessed for the years 1869 or 1870,—these being
the years in which it is claimed the taxes were levied
for which the land was sold. The plaintiff, in reply,
denied that there was no assessment of the land, and
further pleaded an estoppel and laches on the part of
the defendant, and also pleaded adverse possession
and the special statute of limitations with reference
to attacks upon tax deeds. The district court quieted
the title to the land in plaintiff, and defendant Irwin
appeals.—*Affirmed.*

*H. E. Long* for appellant.

No appearance for appellees.

Deemer, J.—The defendant admits that plaintiff holds tax deeds to the land in question, issued to him in January, 1875, and filed for record April 20, 1875; and that said deeds were issued, pursuant to a sale of land in October, 1871, for taxes purporting to have been assessed and levied thereon for the year 1870; but he claims that there was no valid assessment or valuation of the land by the assessor in either 1869 or in 1870, and that for this reason the deeds are invalid. In proof of his claim he produces the assessor's books for the years 1869 and 1870, which show that no valuation was placed upon the land for the year 1869 by the assessor, and that no entry whatever was made upon the books for the year 1870; and he claims that this rebuts the presumptive evidence furnished by the tax deed that there was a valid assessment. It is no doubt true that to constitute a valid assessment by the assessor he must not only list the property, but also place a valuation upon it, and return the same to the proper officer; but it does not necessarily follow that because he neglects this there is no valid assessment. At the time this assessment was made the law provided (Revision, section 739) that the board of supervisors, at their regular meetings in June, "shall add to said assessment any taxable property in the county not included in the assessment as returned by the assessors, placing the same in the list of the proper township, and shall assess the value thereof." The same Revision, at section 747, further provided that "the clerk of the county board of supervisors may correct any clerical or other error in the assessment or tax books, and when any such correction affecting the amount of the tax is

made, after the books shall be placed in the hands·
of the treasurer, he shall charge the treasurer with all
sums added to the several taxes, and credit him with.
all deductions therefrom, and report the same to the
supervisors." Another provision of the Revision is.
(section 752): "It shall be the duty of the county
treasurer to assess any real property subject to tax-
ation, which may have been omitted by the assessor or
county clerk, and to collect taxes thereon; and in such
cases where real property, subject to taxation, shall
be assessed, the words, 'By Treasurer.'" It is also·
provided by section 753 of the same Revision: "In all
cases he is required to note opposite the tract or lot
not having been assessed by the township assessor, or
other proper officer, it is hereby made the duty of the
owner thereof, by himself or his agent, to have the
same property assessed by the treasurer, and to pay
taxes thereon. And no failure of the owner to have
such property assessed, or to have the errors in the
assessment corrected; and no irregularity or error or
omission in the assessment of such property, shall
affect in any manner the legality of any taxes levied
thereon; nor affect any right or title to such real prop-
erty which would have accrued to any party holding
under or by virtue of a deed executed by the treasurer
as provided by this act, had the assessment of such
property been in all respects regular and valid.
* * *" This section of the Revision is retained in our·
present Code as section 852, so that it is entirely imma-
terial as to which law shall be applied to this contro-
versy. It seems that a consideration of these sections of
the Revision and of the Code which we have quoted
ought to be sufficient to settle the question presented
by this appeal. It is evident that the lands were·
assessed by some one, and a levy of taxes was made as
against them, else there could have been no sale. Now,
the presumption is that every officer charged with any

duty with reference to this assessment and levy did his duty. When the assessor's book was returned to the board of supervisors,—as by the Revision it was required to be,—and the board discovered that no valuation or assessment had been made, it became its duty, under section 739 of the Revision, before quoted, to assess the value thereof. If the board failed to do its duty, then the clerk of the board of supervisors, when making up the tax book, was authorized, under section 747, to correct any such omission; and if he failed to do it, and the books went to the county treasurer with the omission of a valuation upon the lands in question from the tax books, then it was his duty to make the assessment under section 752. And if each and all of these officers failed to do their duty, then it was incumbent on the owner to have the same assessed by the county treasurer under section 753, above set forth. And the law expressly says that no such failure of the owner, and no irregularity, error, or omission in the assessment, shall affect the title to such real property held by any person under and by virtue of a tax deed. Without, at this time going to the extent of holding that the alleged want of valuation of the land cannot be taken advantage of by the owner of the land by reason of the provisions of the law last above quoted, it is enough to say that we will presume that some of these persons who had a duty to perform with reference to the assessment of these lands did their duty; and, as the defendant has not negatived these presumptions, he has failed to overcome the presumptive validity of the tax deed. This proposition we regard as settled by the case of *Genther v. Fuller*, 36 Iowa, 604, wherein it is held that, conceding certain matters ought to have been shown by the assessment book, yet it by no means amounted to proof of their nonexistence. It is there said: "The fact that these matters do not appear in the

assessment book does not overcome the evidence
borne by the deed of their existence.  It would be
otherwise if the assessor's books were the only evi-
dence, other than the deed, which the law would
receive to establish the facts in question."  It was
incumbent on defendant to show, in order to overcome
the presumption afforded by the tax deed, that none
of these officers did their duty with reference to the
assessment of the land for taxes, and, having failed
in this, he cannot recover.  As supporting our con-
clusions, see *Robinson v. Bank*, 48 Iowa, 354; *Baker v.
Crabb*, 73 Iowa, 412 (35 N. W. Rep. 484; *Bullis v.
Marsh*, 56 Iowa, 747 (2 N. W. Rep. 578, 6 N. W. Rep.
177); *Leavitt v. Watson*, 37 Iowa, 93; *Love v. Welch*,
33 Iowa, 192; *Eldridge v. Kuehl*, 27 Iowa, 160; *Ware
v. Little*, 35 Iowa, 234; *Soukup v. Investment Co.*, 84
Iowa, 448 (51 N. W. Rep. 165); *Griffin v. Tuttle*, 74
Iowa, 219 (37 N. W. Rep. 167); *Slocum v. Slocum*, 70
Iowa, 259 (30 N. W. Rep. 562); *Hintrager v. Kiene*, 62
Iowa, 605 (15 N. W. Rep. 568, 17 N. W. Rep. 910).  The
cases of *Early v. Whittingham*, 43 Iowa, 162; *Easton v.
Savery*, 44 Iowa, 654; and *Land Co. v. Scott*, 44 Iowa,
143,—are clearly not in point, and none of then decide
the mooted question.

But, aside from all this, the record affirmatively
shows that the appellant has paid no taxes on these
lands since he obtained his patent in the year 1857.
They have been sold for the taxes of each and every
year up to and including the year 1870.  Since that
time the plaintiff has paid all the demands made by
the state, either by redeeming from sale or paying
directly to the county treasurer.  Plaintiff took posses-
sion of the property in the year 1889, and has since used
and occupied the same, and has expended thereon in
improvements nearly three hundred dollars.  These
are strong grounds for holding that defendant is not
entitled to any relief at the hands of a court of equity

on account of his laches. It is certainly true that where a party, without any excuse for his delay, permits more than twenty years to elapse after a sale is had of his property for delinquent taxes, before attacking the same, he will be required to adduce satisfactory evidence in support of his contention that no assessment was made before a court of equity will grant him relief. All the evidence he produces, as we have stated, is that the assessor's books for the years 1869 and 1870 show no valuation of the land by the assessor. In all other particulars the assessment is conceded to be valid. And we think a strong presumption arises that the other officers, whose duty it was to correct this omission or mistake, did their duty. We are satisfied that the decree is correct and it is *affirmed.*