## JACOB FULLMER, Appellant, v. AUSTIN BECK.

**Adverse Possession.** No formal claim of ownership to a fence is necessary on the part of one whose possession and ownership up to the fence are unquestioned, in order to make such possession adverse.

RULE APPLIED. The evidence showed that the strip in controversy was a part of the original government sub-division owned by plaintiff. About the year 1855 one M. purchased the land owned by defendant, and in 1858, after a private survey, built a fence on the line established, which included the strip in controversy, and occupied and claimed to own the land up to the line. About the year 1863 F. purchased the land, and in 1869 planted a hedge fence as near the fence previously erected as it could be built. Defendant purchased the land in 1882, and testified that he occupied and claimed to own the strip in controversy for more than ten years before it was disputed by any one. His occupation was open and notorious, although the deed under which he held described his land as a government sub-division, and he testified he claimed nothing more than what was contained therein. *Held,* that defendant had acquired title to the strip in controversy by adverse possession.

*Appeal from Benton District Court.*—G. W. BURNHAM, Judge.

### WEDNESDAY, MAY 18, 1898.

ACTION at law to recover possession of certain real estate, and damages for its detention and use. At the close of the evidence, a verdict was returned for the defendant, by direction of the court, and judgment was rendered in his favor for costs. The plaintiff appeals.— *Affirmed.*

*Tom H. Milner* for appellant.

*Struble & Stiger* for appellee.

ROBINSON, J.—The plaintiff claims to be the absolute and unqualified owner of a forty-acre tract of land, which is described, and the defendant is the owner of an adjoining tract of forty acres. The controversy between the parties is in regard to the ownership of a strip of land two rods wide and eighty rods long, which is on the boundary line between the two tracts. The evidence tended strongly to show that the strip was a part of the original government subdivision of land now owned by the plaintiff; but the evidence also showed, without material conflict, that the strip has been used and occupied as a part of the tract now owned by the defendant for about forty years. We are required to determine whether the evidence so clearly shows that the defendant is the owner of the strip, by virtue of adverse possession under claim of title that the court was justified in directing a verdict for him. About forty years before this action was commenced, the tract now owned by the defendant was purchased by Levi Marsh. About the year 1858, he had the boundary line in question established by a private survey, built a fence

on that line, and broke and occupied and claimed to own the land on his side up to that line. His right of possession and claim of ownership, so far as he knew, were never disputed. After owning the land about eight years, he sold it to Charles S. Fuller, who farmed it to the limit of the fence until the year 1882, when he sold it to the defendant. In 1869, Fuller planted a hedge fence as near the fence built by Marsh as it could be placed; and since that time, until a short time before this action was commenced, that hedge has been maintained and treated as the boundary line between the two tracts. A few years after Fuller bought the land as stated, one of his sons bought the land now owned by the plaintiff, and owned it until the year 1870. During that time he farmed his tract up to the fence, and his grantees have done the same. The defendant has occupied his land since he purchased it, and, when this action was commenced, had occupied the strip in controversy under a claim of ownership for about fourteen years, and his claim does not appear to have been disputed by any one until May, 1895, when the plaintiff caused a survey of the land to be made, and since that time he has claimed to own the strip. It is said that the defendant and his grantors did not claim to own anything not included in the government subdivision of land described in the conveyances to them; and it is quite probable that the boundary line in dispute was originally located by mistake. But the evidence does not show that the defendant and his grantors did not claim beyond the government boundary line. Although the evidence as to the claim under which the defendant's grantors held possession is not satisfactory, yet it does show that they occupied to the line of the fence, and justifies the presumption that they so occupied adversely and under claim of ownership. The evidence on the part of the defendant is more explicit. He testifies that he had occupied

the strip of land in dispute, and that he claimed to own to the hedge, for more than ten years prior to the commencement of this action. His occupation and exercise of dominion over the strip were continuous, open, visible, and notorious for more than ten years before they were disputed by any one. It is true that the deed under which he holds describes the land he claims as a government subdivision, and not by metes and bounds, and that in answer to the question, "You do not claim anything more than what is described in the deed there, do you?" he answered, "No; I don't know that I do." But it is evident from his entire testimony that the answer was based upon the effect which he believed should be given to the deed, and was not intended to state that he did not claim title to the strip. It is also true, that after stating that he always claimed to own the land to the hedge, he stated that he did not so claim to any one; but as his possession and ownership were unquestioned, formal claim of ownership was not required. His occupation and use of the premises under the circumstances stated were a continuous and public assertion of title. *Crapo v. Cameron*, 61 Iowa, 447.

The undisputed facts of the case do not bring it within the rule of *Grube v. Wells*, 34 Iowa, 148. In that case the defendant's grantor inclosed lot 1, which he owned, and, in inclosing it, by mistake inclosed a part of lot 260 adjoining, which was, and until four or five years before the commencement of the action remained uninclosed. The defendant and her grantor intended only to claim lot 1, but supposed that included all of the premises inclosed. It was held that title by prescription had not been acquired to the inclosed part of lot 260. In this case the owner of each of the adjoining forty-acre tracts occupied to the fence, and no further. As both tracts were improved, the occupation

of the strip in dispute was in the nature of an assertion of title to it, and the occupation of the defendant was with an intent to claim title. Had the defendant and his grantors intended to claim ownership only of the government subdivision, and not of the strip in question, unless it was a part of that subdivision, the occupation would not have been adverse, under the doctrine of *Grube v. Wells*, because not based on the claim of ownership. Much of what we have said of the case last cited applies to the cases of *Skinner v. Crawford*, 54 Iowa, 119; *Mills v. Penny*, 74 Iowa, 172; *Fisher v. Muecke*, 82 Iowa, 547; *Heinz v. Cramer*, 84 Iowa, 497; *Goldsborough v. Pidduck*, 87, Iowa, 599, and *Jordan v. Ferree*, 101 Iowa, 440, also relied upon by the appellant. This case is, in principle, more nearly like the cases of *Doolittle v. Bailey*, 85 Iowa, 398; *Hiatt v. Kirkpatrick*, 48 Iowa, 78; *Meyer v. Weigman*, 45 Iowa, 579; *Brown v. Bridges*, 31 Iowa, 138; *Close v. Samm*, 27 Iowa, 503; *Burdick v. Heivly*, 23 Iowa, 511. We reach the conclusion that the district court was fully justified in directing a verdict for the plaintiff. The appellant complains of certain rulings of the court, but we think without sufficient reason. The judgment of the district court is AFFIRMED.