DETLOF KAHL, Appellant, v. LEWIS SCHMIDT.

**Boundary Dispute:** ADVERSE POSSESSION. Adjoining land owners, being in doubt as to the dividing line, cause a survey to be made, which, by mistake, gave plaintiff more than the number of acres claimed by him. It was never agreed that the line surveyed should be the dividing line, and the plaintiff stated on numerous subsequent occasions that he did not claim more than the number of acres he purchased, but after the mistake was discovered claimed the excess by adverse possession. The line was not marked by fence or other permanent boundary for as long as ten years before the bringing of suit to establish title. *Held,* that the parties occupied under a mistaken belief that the line located was correct, and that neither intended to claim more than the true amount. Hence, plaintiff did not hold excess adversely.

*Appeal from Crawford District Court.*—HON. S. M. ELWOOD, Judge.

MONDAY, FEBRUARY 6, 1899.

APRIL 27, 1876, the plaintiff bought the west one hundred and twenty acres of the north one-half of section 5, township 84, range 39, in Crawford county. The north half of the section contained three hundred and forty-seven and thirty-six one-hundredth acres. In March, 1883, the defendant bought the south half of the east two hundred and twenty-seven and thirty-six one-hundredth acres of the north half of said section. Both parties have, since their respective purchases, owned and occupied the land thus conveyed to them. In 1881, while defendant was occupying the land now owned by him, the parties caused a survey to be made by the county surveyor, to ascertain the line, and a line was fixed by the surveyor on which the parties built a fence, which has marked the line of their occupancy since that time. Later, the defend-

ant became convinced that the line thus marked was not the correct one; that it is too far west; and, upon his making such a claim, plaintiff brought this action to establish his title to all land east of the line fixed by the surveyor. The defendan: claims that he owns four and a half or five acres of land west of the line so fixed, and the issues are such that the rights of the parties thereto are to be determined. The district court found for the defendant, and the plaintiff appealed.— *Affirmed.*

*J. P. Conner* and *T. J. Garrison* for appellant.

*Shaw, Kuehnle & Beard* for appellee.

GRANGER, J.—Some undisputed facts are: That the north half of section 5, in question, contains three hundred and forty-seven and thirty-six one-hundredth acres, and that plaintiff purchased one hundred and twenty acres on the west end of the half section, and that there remained of the north half of the section two hundred and twenty-seven and thirty-six one-hundredth acres, of which the defendant bought the south half, so that each purchased a definite number of acres. It will be seen that the half section overruns the regulation measurement by twenty-seven and thirty-six one-hundredths acres. If the line fixed by the surveyor in 1881 is to be established as the boundary line between the parties, and the same rule should obtain between plaintiff and the owner of the north half of the two hundred and twenty-seven and thirty-six one-hundredths acres, plaintiff will have one hundred and twenty-nine acres of land, or nine acres more than he purchased, and each of the others will have four and a half acres less than he purchased. There is no pretense in the case but that, if the line of 1881 is preserved, the result will be as stated. The theory on which plaintiff claims he should have the additional land is that prior to 1881, he claimed that he owned land still east of where the line of 1881 was fixed, and he really did then occupy land east of that line. Defend-

ant thought otherwise, and wanted the land surveyed, and a survey was made, resulting in the line being fixed as we have stated. On the line so fixed, the surveyor set a stone, and the parties planted a willow tree, and there the fence was built about November, 1884, and this action was commenced in March, 1894. As to the location of the line so fixed, there is no dispute. Since then, the parties have occupied the land with that as the dividing line. Plaintiff claims that the establishment of the line was the settlement of a dispute as to the line, by agreement, and that the occupancy of the land in question since March, 1883,—more than ten years,—under claim of title, gives him a title by adverse possession. On the other hand, defendant maintains that there was no agreement to fix that as the line, but that both parties occupied the land under a mistaken belief that the line, as located, was the correct one, neither party ever intending to claim more than the number of acres purchased by him. The practical dispute in the case is whether the facts bring it within the rule that will give title by prescription. In *Heinrichs v. Terrell,* 65 Iowa, 25, a rule is stated as follows: "Where a division line is agreed upon by persons owning adjoining real estate, and possession is taken in accordance with such agreement, we think such possession must be regarded as adverse from the time possession is taken; and, if so held and continued for the period of ten years next succeeding, it will ripen into a perfect title, binding upon the parties and those claiming under them." It is under this rule that plaintiff claims title. The rule is not questioned by defendant, but it is said that the facts do not show adverse possession, in that there was never an intention by plaintiff to claim more than one hundred and twenty acres, that being the amount of his purchase. The following is a part of plaintiff's testimony: "When I commenced farming, I supposed the line of my 120 acres went out that far. I never claimed or thought that I went any further east than it was necessary to get one hundred and twenty acres. I did not want to get inside of my fence any land that they

(Schmidts) bought and paid for. Would not have taken more than I bought and paid for if I had known it. I never claimed to own more than one hundred and twenty acres. I commenced farming up to that line because I thought my line went that far,—the line of my one hundred and twenty acres." It appears that the survey of 1881 was erroneous, and the true line between the parties, on the basis of their purchases, was found by a survey made in 1894. The plaintiff was present at that survey. The surveyor was a witness, and he testified that plaintiff then said, "that he only wanted his land that he bought, which was one hundred and twenty acres." One E. H. Wood testified: "I had a conversation with the plaintiff, Detlof Kahl, in 1894, about this line. There were present Detlof and his brother and Peter Jepsen, Kahl said the Schmidts were trying to get some of his land. I wanted to know how much he bought; and he said one hundred and twenty acres. He said he bought one hundred and twenty acres, and that was all he wanted. Next day he came down, and said he guessed he would take the other nine acres." Other admissions of the same character appear in the evidence.

The fact is not in doubt that up to 1894 the plaintiff never thought of making an adverse claim to any land other than the one hundred and twenty acres he bought. The only claim he made to the land in question was that he thought it was a part of the one hundred and twenty acres he bought. Under the circumstances he was without a claim of right on which to base adverse possession. In *Fisher v. Muecke*, 82 Iowa, 547, a similar question is presented; and we there said: "By the proceeding to establish the corners and boundary lines it was judicially determined that the strip of land in question was a part of the northeast quarter of section fifteen (15), and the only question remaining in this case was whether the defendant, Frederick Muecke, had acquired title by prescription. He never claimed to own or be entitled to the possession of more than the northwest quarter of section four-

teen (14), and only claimed this strip of land because he believed it was a part of that quarter. It is not a part of that quarter, and therefore he not only never had color of title to it, but never held it by claim of right adversely and hostile to the true owner. His possession is identical with that in *Grube v. Wells*, 34 Iowa, 148." In *Goldsborough v. Pidduck,* 87 Iowa, 599, the controversy was between lot owners, where the fence was not on the line, but supposed to be, and, while the party claimed to own to the fence,—really beyond the line,—he did not claim to own more than the one lot. It is said that, because the occupation and claim of ownership were founded on a belief that the fence was on the true boundary line between the lots, there could not be a finding of title by adverse possession. In *Skinner v. Crawford,* 54 Iowa, 119, it is said, speaking of such a case: "Indeed, that it is the intention to claim title which makes the possession of the holder of land adverse is the doctrine upon which the decision in every case proceeds. If it be clear that there is no such intention, there can be no pretense of adverse possession. Therefore, it has been held that if the owner of the land, through inadvertancy or ignorance of the dividing line, includes a part of an adjoining tract within his inclosure, it is not a possession adverse, or so in the nature of a disseizin as to prevent the true owner from conveying and passing the same by deed." Numerous authorities are to the same effect.

It seems to us the facts bring this case within that rule. It does not appear that, by the survey of 1881, the parties intended to fix by settlement a boundary line, but, as the line was not known, they had the survey to find it, and, supposing that fixed to be the correct one, they treated it as such till the mistake was discovered. The occupancy that followed was purely a mutual mistake, neither party ever intending that the survey should be conclusive as to the line unless correct. The line was not marked by a fence or any permanent boundary until within ten years prior to the commencement of this suit. What would have been the effect of such a

boundary we do not now consider. It does not appear that, after the survey was made, the parties agreed that it should be the line; nor does it appear that, at any time, there was an agreement to that effect. The late case of *Fullmer v. Beck,* 105 Iowa, 517, in which title by adverse possession is sustained, makes prominent the distinguishing fact that ownership was claimed to the land in dispute, which was beyond the government subdivision, and the finding of adverse possession is based thereon. The judgment of the district court is AFFIRMED.