A. H. KELLER and M. K. WHITNEY, Appellees, v. T. W. HARRISON and GEORGE TELFORD, Appellants.

**Commencement of actions:** NOTICE. Where two actions are instituted on the same day between the same parties, the one in which the notice is first served will be treated as commenced first.

**Transfer to equity.** Where the decision of issues in an action of ejectment would be decisive of those raised in a counterclaim, asking that the title to disputed land be quieted, refusal to transfer the cause to the equity calendar was not erroneous.

**Consolidation of actions.** An action in ejectment should not be consolidated with one to quiet title; but if otherwise refusal to consolidate is so largely a matter of discretion that the order will not be interfered with on appeal.

**Boundaries:** LOCATION: REMEDIES. The remedy provided by chapter 5, title 21 of the Code, for the establishment of lost and disputed boundaries is a special proceeding, and does not deprive litigants of any pre-existing remedy.

**Pleadings:** AMENDMENT: VERIFICATION. Failure to verify an amendment to a pleading which does not set up a new cause of action does not, for. that reason, render it subject to a motion to strike.

**Same:** REPLY. While a reply should be verified still refusal to strike it from the files on that ground is without prejudice, where it simply pleads a general denial which the law would interpose without reply; or, if pleading other matters, where the same are again pleaded in an amendment filed without objection and properly verified.

**Quieting title:** ABSTRACT OF TITLE. An abstract of title attached to a petition to quiet title which sets out the character of each instrument, names of grantors and grantees and the book and page where each are recorded is sufficient.

**Evidence:** FIELD NOTES OF GOVERNMENT SURVEY. A duly certified copy of the field notes of the Government survey of land, kept in the office of the County Auditor, when properly identified by him is admissible in evidence.

**Same:** TAX RECEIPTS. In an action to recover a strip of land along the boundary line of a government subdivision, admission of tax receipts showing that each of the adjoining owners had paid taxes on full subdivisions was proper as bearing on the question of good faith.

**Boundaries:** GOOD FAITH OF A SURVEY: EVIDENCE. The evidence, in an action to recover a strip of land along the boundary line between adjoining owners, is held to justify submission of the question of the good faith of a survey made many years previously by a surveyor owning land in the same section.

**Same:** BURDEN OF PROOF: INSTRUCTION. In an action to recover the possession of a strip of land and damages for deprivation of its use, on the ground that the line as claimed by defendant is not the government line, the burden is upon plaintiff to prove the location of the government survey at the point claimed by him, but when he has done this the burden then devolves upon the defendant, claiming acquiescence in the line contended for by him, to show that it has been acquiesced in for such length of time that it should be accepted as the boundary, and the jury should be so instructed. In the instant case the instruction is held misleading.

**Unsupported issues:** SUBMISSION: REVIEW. Where the defendant in ejectment pleads title to the land in dispute by adverse possession, but the evidence shows neither a claim nor title to the land except as it is a part of his government subdivision, the plea has no support in the evidence and should

not be submitted, and for this reason an instruction in relation thereto will not be reviewed on appeal.

**Boundaries:** ACQUIESCENCE. Acquiescence in a boundary line does not presuppose an agreement in relation to the line either express or implied; but an agreement fixing a boundary line will be presumed from the good faith maintenance of a division fence, trees or other improvements with respect thereto for a long time, up to which both adjoining owners have occupied and cultivated their fields.

*Appeal from Palo Alto District Court.*— HON. A. D. BAILIE, Judge.

FRIDAY, MAY 8, 1908.

REHEARING DENIED TUESDAY, SEPTEMBER 29, 1908.

ACTION in ejectment for the possession of a strip of land and damages for its wrongful detention resulted in a verdict and judgment for the plaintiffs. The defendants appeal.— *Reversed.*

*Dwight G. McCarty* and *T. W. Harrison,* for appellants.

*E. A. Morling,* for appellees.

LADD, C. J.— The controversy is over the location of a boundary line. Plaintiffs own the N. E. ¼ of section 28, and the defendant Harrison the N. W. ¼ of the same section. Telford, being his tenant. The claim is that defendants are about twenty rods over the line, and the relief sought is the possession of this strip, together with damages for withholding the same and trespass thereon. The defendants denied that their occupancy is beyond the true boundary, interposed the defenses, adverse possession and acquiescence, and in a counterclaim pray that title be quieted in Harrison.

It appears that on the same day Harrison instituted

suit to quiet title, but the notice was not served until after
that in this action, which as a consequence,
must be held to have been begun first. *Little-
john v. Bulles,* 136 Iowa, 150.

1. COMMENCE-
MENT OF AC-
TIONS: notice.

And as the decision of the issues in the law action
are determinative of those raised in the counterclaim, the
motion to transfer to the equity side of the
calendar was rightly overruled. *Gibson v.
Seney,* 138 Iowa, 383.

2. TRANSFER TO
EQUITY.

Nor was there any error in overruling the motion to
consolidate this action with the suit in equity. *Hodowal v.
Yearous,* 103 Iowa, 32. Even were it otherwise, the re-
fusal to order consolidation is so largely dis-
cretionary that we should not have inter-
fered. *Jones v. Witousek,* 114 Iowa, 14.

3. CONSOLIDATION
OF ACTIONS.

II. Defendants moved that the action be dismissed for
that, as is contended, chapter 5 of title 21 of the Code pro-
vides an exclusive remedy for the location of lost corners and
disputed boundaries. But this does not pur-
port to do away with any remedy then existing.
The proceeding is special, and was first authorized by chapter
8, Acts 15th General Assembly; whereas, laws prescribing
procedure in actions for the recovery of real property have
been on the statute book since the Code of 1851, at least. As
the remedy by a special proceeding to locate disputed corners
and boundaries does not purport to be exclusive or take away
any pre-existing remedy, either expressly or by fair implica-
tion, it must, under well-settled principles of law, be regarded
as cumulative and to provide a remedy in addition to another
continuing in force. See 1 Cyc. 709, and cases cited in note.

4. BOUNDARIES:
location:
remedies.

III. An amendment to plaintiff's petition and their
reply were not verified, and on this ground defendants moved
the court to strike them from the files. Com-
plaint is made of the order overruling the mo-
tion. As no new cause of action was set up in the amend-

5. PLEADINGS:
amendment:
verification.

ment to the petition, the ruling as to that was right.    Section 3591, Code.

The ruling as to the reply was erroneous.    Sections 3580 and 3588 of the Code.    But this was without prejudice.    It pleaded a general denial of the allegations of the answer which the law without reply interposed (section 3576, Code), and that portion alleging an early survey set up in the answer to have been fraudulent and incorrect was again stated more specifically in an amendment to the reply filed in response to defendants' motion. As there was no objection to this amendment, leaving the reply on file did not affect the issues.

6. SAME: reply.

IV.    The abstract of title attached to plaintiffs' petition merely gave the character of each instrument in the chain of title, the name of grantor and grantee therein, and the book and page of record where recorded.    Defendants' motion to require the dates of the instruments and of filing them to be stated was overruled. The contents of the abstract were in strict compliance with section 4188 of the Code, and no more was required.

7. QUIETING TITLE: abstract of title.

V.    The county auditor identified a book as a certified copy of the field notes of the United States government survey kept in his office.    To it was attached the certificate of Aaron Brown, register of the state land office of the state of Iowa, that from pages 1 to 399, inclusive, was a true and correct copy of the field notes of the government survey on deposit in his office. This certificate was dated April 21, 1873, and the book was filed with the auditor January 6, 1874.    The pages including the field notes relating to the land in controversy were then introduced in evidence over defendant's objection.    Section 4635 of the Code provides that " duly certified copies of all records and entries of papers belonging to any public officer, or by authority of law filed to be kept therein, shall be evidence in all cases of equal credibility with the original record or papers so filed."    If, then, the book was properly kept in

8. EVIDENCE: field notes of government survey.

the auditor's office, there can be no doubt of the correctness of the court's ruling. By an act of Congress, approved June 12, 1840, chapter 36, 5 Stat. 384, the Secretary of the Treasury was directed " to take all necessary measures for the completion of the surveys in the several districts for which surveyor generals have been or may be appointed at the earliest possible period compatible with the purposes contemplated by law, and whenever the surveys and records of any such district or state shall be completed, the surveyor general thereof shall be required to deliver over to the Secretary of State of the respective states, including such surveys or such other offices as may be authorized to receive them, all the field notes, maps, records and other papers appertaining to land titles within the same." In 1866 the Legislature made it " the duty of the register of the state land office to receive any field notes, maps, records, or other papers, relating to the public surveys of this State, whenever the same shall be turned over to the state in pursuance of the above act of Congress," and upon their receipt the register was required to " provide for their safe-keeping and proper arrangement as public records." Chapter 3, Acts 12th General Assembly. See section 90, Code 1873. Duly certified copies of all records belonging to or filed to be kept in any office by authority were receivable in evidence of equal credibility as the original under section 4047 of the Revision of 1860, and under section 248 of the Revision the county judge was required " to procure for his county a copy of the original field notes of the original survey of his county by the United States," and deposit the same in his office. By an act of the Twelfth General Assembly the office of county judge was abolished, the act to take effect in this respect January 1, 1869, and the jurisdiction of the county court being transferred to the circuit court then established, and he was made ex officio county auditor until the first Monday in January of 1869, and upon the election of the latter required to turn the office over to him. Chapters 86 and 160, Acts 12th Gen-

eral Assembly.   These enactments made no provision for the copy of the original field notes which may have been procured in pursuance of law by the county judge, and whether in view of the duties imposed by the last-cited act it may be inferred that the custody thereof was intended to pass to the county auditor is not necessary now to determine inasmuch as the certified copy was filed subsequent to the adoption of the Code of 1873.   The duties of the county surveyor are defined by chapter 8 of title 4 of that Code, of which section 371 enjoins that "Previous to making any survey he shall furnish himself with a copy of the field notes of the original survey of the same land, if there be any in the office of the county auditor and his survey shall be made in accordance therewith."   Section 535 of the Code is identical with this, save that there is inserted in lieu of " the office," the words, " his office or that," so that the statute recognized the county auditor as a proper custodian of the copy of the government field notes, at the time this was filed, and has so done ever since.   This being so, and the same having been certified as required by law, it was rightly received in evidence.

VI.   The tax books were received in evidence showing that since 1873 the E. ½ of the N. W. ¼ of section 28 had been assessed as eighty acres, and taxes paid thereon by defendant as such, and that the same was true of

9. SAME: tax receipts.

the W. ½ of the N. W. ¼ since he acquired it in 1884, and also that the N. E. ¼ of the section had always been assessed and taxes levied thereon as a full quarter. This evidence was admissible as bearing on the good faith of the defendant.   If he claimed to own the land, it was his duty to see that it was properly assessed, and the fact that he did not may be considered for the purpose stated.   Of course, he might have claimed to have owned the land and remained silent to avoid taxation, and, on the other hand, he may not have had it assessed because he did not claim to own the land.   Where the discrepancy is small, this might

be of slight or no significance, but it is otherwise where it is so great as in this case. The ruling by which the books were received is approved.

VII. The defendant Harrison, as county surveyor, in April, 1873, surveyed the land in section 28 and recorded a plat thereof in pursuance of statute. He then owned the E.

10. Boundaries: good faith of a survey: evidence.

½ of the N. W. ¼ of the section, and because of his interest in the survey as well as the plat thereof it is alleged to have been void. Appellees seem to have waived the point, as no objection was raised to the introduction of the plat, and it was not argued. But it was also alleged that in this survey the defendant knowingly set the north and south quarter corners of the section over twenty rods with the purpose of appropriating ten acres of land with his eighty acres, and that he subsequently purchased, in 1884, the eighty acres west of it to which a like amount thereby had been added. Appellants urge that there was not enough evidence to carry this issue to the jury. In the plat of his survey, the line between the east and west quarter corners was noted as 80.31 chains divided so as to give the east half 40.20 chains, the south line of defendant's eighty acres 20.06 chains, and of the eighty acres to the west 20.05 chains, and yet the north end of the last-mentioned eighty was shown to be 22.42½ chains, and the north end of defendant's eighty the same, while the east half of the line was not stated. Nor is the length of the east half of the south line disclosed, though the west half thereof was divided into two parts, 22.39 chains each. Of course, no government corner is located in the center of the section, but, before noting a corner nearly twenty rods from where it would ordinarily be found, one might reasonably expect a disinterested surveyor to indicate the other lines affected thereby and their length, and this is especially true where the survey is being made, as defendant claims this was, at the instance of one of those affected by the shortage. It is hardly conceivable that, if the then owners of the north and south halves

of the northeast quarter of the section had been advised that
the survey indicated that their east and west lines were about
one hundred and forty rods long, they would have acquiesced
in the survey as correct.    Then there is the improbability of
so great a mistake in the government survey of level land,
and that the identical mistake should have been made on the
south line as well as on the north.    The field notes indicate
that the quarter corners were halfway between the section
corners, and a lawyer testified to having examined all the
corners in 1869 in connection with locating homesteads for
himself, his brother, and father, and that they estimated dis-
tances between them by tying a cloth to the wheel of his
buggy and counting its revolutions, and that they found no
considerable differences.    On the other hand, there is much
evidence to the effect that there were mounds such as made by
the government surveyors, and some that stakes were plainly
visible and in harmony with defendant's survey.    Without
reviewing the evidence in detail, we have concluded that, in
view of defendant's interest and circumstances connected
with his survey and the great discrepancy between the sur-
vey and the government field notes, the evidence warranted
the court in submitting the issue as to the *bona fides* of de-
fendant's survey to the jury.

VIII.    With reference to the burden of proof the court
instructed that:    " Before the plaintiffs will be entitled to
recover, they must prove their right to said premises in con-
troversy, and the possession thereof, and their
damages, by a preponderance of the evidence.
But, as already stated, the burden is on the defendant to prove
by a preponderance of the evidence that the boundary line to
said land in controversy is where he claims it to be, and the
burden is also upon him to prove his right to said land by
adverse possession or acquiescence by a preponderance of the
evidence."    This did not convey to the comprehension of the
jury with clearness the rules which should have governed it.
Doubtless the court intended to convey the idea in the first,

11. SAME:
burden of
proof: in-
struction.

sentence that the burden was on plaintiff's to prove that the strip in dispute was a part of the northeast quarter of the section, or, more specifically, that the north and south quarter corners of the section were midway between the section corners, as claimed by plaintiffs and indicated by the field notes. It is much broader, but if so construed it is directly contradictory of what follows, in saying that the burden was on defendant to prove that the boundary to said land is " where he claims it to be." The defendant claimed that the government line was twenty rods east of where the plaintiffs contended it to be, and from this language the jury might have understood this claim was alluded to. No previous instruction obviated such conclusion, save, possibly, that with reference to the burden in establishing title by adverse possession, and this inference was precluded by what follows. A lawyer might figure out what was intended, but the ordinary jury would experience great difficulty in determining from this instruction upon whom. the burden of proof rested. If plaintiffs succeeded in proving the location of the government line where they contended it should be, then the burden of proof was on defendant to prove that the division line had been acquiesced in so long and under such circumstances that it should be accepted as the boundary between the respective tracts.

IX. The defendant pleaded as a defense that he had acquired title by adverse possession, and some of the instructions concerning the same are criticised. As he had no title 12. Unsupported or color of title save as a part of the northwest issues: submission: quarter of the section, and made no claim to review. it save as a part of that quarter, the defense was without support in the evidence, and should not have been submitted to the jury. For this reason it is unnecessary to take up the exception to the instructions.

X. The defendant as a defense claimed that by his tenants he had occupied and cultivated his land up to the division line for more than ten years subsequent to 1873,

during which time the owners of the quarter section now
owned by plaintiffs had done likewise, and
thereby had mutually acquiesced in it as the
true boundary between the tracts.   There was evidence tend-
ing to support this contention, and the jury was instructed:

13. BOUNDARIES: acquiescence.

> Acquiescence, as the term is here used, presupposes
> an agreement, express or implied, between the parties as to
> the existence of a certain line or boundary, and you are told
> that such an agreement may be shown by the acts of the
> parties interested in the land adjacent to said line, as by
> cultivating and cropping the land up to said line or supposed
> line, fencing thereon, or making other improvements with
> reference thereto, and it is for you to determine from all the
> evidence admitted upon the trial in relation thereto whether
> the parties did in fact acquiesce in and consent to the boun-
> dary line as claimed by the defendant as being the true boun-
> dary line dividing their respective lands.   But, as already
> stated, it must appear, before title by acquiescence can be
> claimed, there was some agreement, either express or implied,
> that such was the true boundary line, and, unless such agree-
> ment is shown from all the evidence of the acts of the parties
> as above mentioned or otherwise, title by acquiescence cannot
> exist.

The jury were further told that the question on this
branch of the case was where the " boundary line fixed, main-
tained, agreed upon, and acquiesced in by the owners of the
adjacent land, in good faith, as being the true boundary line."
And, further, that:

> If you find from the evidence that the boundary line
> upon the east side of said twenty-acre tract as claimed by the
> defendant was in good faith located, maintained, recognized,
> and acquiesced in by all the parties owning lands adjacent to
> said alleged boundary line for more than ten years, then such
> boundary line will govern, and your verdict in such case
> should be for defendant.   But if the same was not originally
> made in good faith on the part of the defendant Harrison,
> upon an express or implied agreement between the parties

that such was the true boundary line, then title by acquiescence will not arise, and you should in such case find this issue in favor of the plaintiff.

The theory of the law as stated is erroneous. Acquiescence does not presuppose an agreement to a line. Nor is it essential that the jury find such agreement, express or implied, as a condition precedent to the application of the doctrine as it was told. On the contrary, an agreement to a boundary is to be inferred from long acquiescence. It is unnecessary to review the authorities farther than to refer to our last and first pronouncements on the subject. In *Quinn v. Baage,* 138 Iowa, 426, we said that the " doctrine of acquiescence is founded on the presumption of an agreement fixing the division line from long maintenance of a fence or other monument marking a line as boundary between the adjoining owners, and this is of such strength that after the lapse of ten years, in the interest of peace and quiet, they are not permitted to gainsay the agreement thus inferred." In *Miller v. Mills County,* 111 Iowa, 654: " In the absence of controlling circumstances, acquiescence in a division line assumed or established, accompanied by actual occupancy in accordance therewith by the adjoining owners for a period equal to that prescribed in the statute of limitations within which an entry may be barred, is conclusive evidence of such an agreement." The rule, as thus stated, has been followed in *Lawrence v. Washburn,* 119 Iowa, 109, *O'Callaghan v. Whisenand,* 119 Iowa, 566, *Klinkner v. Schmidt,* 114 Iowa, 695, and many other cases.

The jury were not told in any of the instructions, as they should have been, that, if defendant, by himself, employés, or tenants, marked by the planting of trees, grove, or other improvements, a visible division line, in good faith believing it to be the true boundary, and for more than ten years subsequent thereto occupied and made use of the land up to such line, and during such period the owners of

plaintiffs' land occupied and cultivated their land up to such line, then they will be conclusively presumed to have agreed thereto as a boundary line, and neither party can be heard to say that the division line so marked is not the true boundary between them.

Others of the one hundred and ten errors assigned require no attention. The rulings were either right, or were such as will not be likely to occur on another trial.— *Reversed.*