ELIZABETH LEEKA et al., Appellees, v. OLIVER CHAMBERS, Appellant.

No. 46052.

Nichols & Nichols, of Sidney, for appellant.

Genung & Genung, of Glenwood, for appellees.

Wennerstrum, C. J.—The litigation that has occasioned this appeal involves the location of a division-fence line between the land of the plaintiffs and that of the defendant. Plaintiffs brought an action in equity to enjoin the defendant from interfering with the fence which they had built on a line claimed to have been established between the land owned by the plaintiffs and that of the defendant. Plaintiffs also asked for damages for the destruction by the defendant of fences which the plaintiffs had at different times built. By cross-petition the defendant asked that the title to the land he claimed be quieted. The trial court granted the injunction asked for by the plaintiffs and dismissed defendant's cross-petition. The defendant has appealed.

The petition of the plaintiffs alleges that a division-line fence 80 rods long between the respective tracts of the parties had been maintained for a number of years; that in the month of June 1940, the defendant removed the fence then existing and threw portions of it upon the land of the plaintiffs; that the plaintiffs thereafter rebuilt the line fence and the defendant again removed it; that the plaintiffs again rebuilt the fence on the line claimed by them and that it was again removed by the defendant. The plaintiffs' action to enjoin the defendant from interfering with plaintiffs' line fence was then brought. The defendant filed a general denial, and thereafter filed a cross-petition in which he asked the court to find and determine the true line between lands of plaintiffs and defendant. He also asked that a decree be entered quieting the title to the land alleged to belong to the defendant.

The line fence in controversy is between the NW¼ of the SE¼ of Section 17, owned by the plaintiffs, and the SW¼ of the SE¼ of Section 17, owned by the defendant. These respective properties are all in Township 70, Range 43, in Fremont county, Iowa. The land of the plaintiffs is north of the land of the defendant and the line of fence which is in controversy is an east-and-west partition fence between the two 40 acres.

The defendant, Charles Chambers, bought his land in 1907, from his father. At the time of defendant's purchase, the tract of land adjoining on the north, which is now owned by the plaintiffs, was owned by defendant's uncle, who had acquired it about the year 1876. It is defendant's contention, and there is some testimony to substantiate his claim, that some 40 or 45 years ago a small drainage ditch was dug along the north side of the land now owned by the defendant. It is further contended that a fence was built on the south side of the ditch across the full length of the 40 acres in order to turn stock. It is defendant's claim that the fence was not on the quarter-section line and he asserts ownership of the land beyond where the ditch was located. This ditch has filled up and there is only slight evidence to indicate its original use.

Defendant, in his efforts to ascertain the true line, employed a civil engineer to survey the land. The engineer testified that he ran a line, which it is asserted is the correct line. He stated that the fence is south of the true line of these two forties. In connection with this survey the engineer stated that he could not find any government monuments of any kind in the neighborhood from which to begin; that he made his survey in accordance with some other fences, and stated that if some of these fences were off the line his survey would be incorrect, and that if the center of the highway where he started was not true to governmental division lines, then his line would not be correct. He further stated that the point from which he started was from information given him by persons who claimed to know where the corners were.

It will thus be observed that the testimony of the civil engineer is of little value in ascertaining as to where the gov-

ernmental division line is. If the contention of the plaintiffs is not sustained in this case, it is apparent that it will be difficult to ascertain just where the true line should be because of the indefiniteness of the civil engineer's findings.

The facts in the case of Sieck v. Anderson, 231 Iowa 490, 1 N. W. 2d 647, are very similar to the facts in the present case. In the Sieck case the trial court found that the division line had been marked by a line fence for more than ten years, and that, by reason of adverse possession and acquiescence, now constituted the true boundary line between the properties in question. This court sustained the trial court. As in the present litigation there was a survey made by a civil engineer who had difficulty in locating the governmental division lines.

In the present case there is a dispute as to whether the defendant has acquiesced in the establishment of the fence line as contended for by the plaintiffs. There is no dispute that the fence line in controversy has existed in its present location for over 35 years. Inasmuch as it has been definitely shown that the civil engineer could not find and ascertain a true governmental line, and it has been shown that this line has been a recognized divisional-fence line for over 35 years, it appears to us that the trial court was correct in its conclusion in finding that the line as contended for by the plaintiffs had been established by acquiescence.

Our cases have been numerous in connection with litigation in relation to controversies of this character.

I. We have previously announced the rule that a line marking the boundary between adjoining owners which is recognized and acquiesced in as such for a period of at least ten years becomes the true boundary line, regardless of the fact that it is not the line established by a survey. Sieck v. Anderson, supra, and cases cited; Miller v. Mills County, 111 Iowa 654, 82 N. W. 1038, and cases cited.

In the case of Klinkner v. Schmidt, 114 Iowa 695, 698, 87 N. W. 661, 662, this court said:

"* * * we find another rule well established in the decisions of this court and elsewhere, to the effect that occupancy to a boundary line recognized by express or implied agreement of adjoining owners may be adverse, and may ripen into title,

even though it does not coincide with the true boundary. This proposition has recently been so elaborated in the case of Miller v. Mills County, 111 Iowa, 654, that an extended discussion of it is unnecessary. That decision is grounded on a series of decisions in this court, supported by many cases in the courts of other states, recognizing the occupation to a boundary line acquiesced in by the parties as being founded on a claim of right, regardless of whether the boundary by acquiescence is the true boundary." (Citing cases.)

In the case of Miller v. Mills County, supra, which is a case that has been repeatedly followed in this state, we find the following statement, at page 659 of 111 Iowa, page 1040 of 82 N. W., which we feel is quite applicable to the situation in the present controversy:

"There was no express agreement between the parties to this case, or their grantors, that the fence be regarded as marking the boundary between their respective tracts of land, but the circumstances are such that an agreement ought to be implied. For more than eighteen years they have occupied up to and acquiesced in the division fence, and maintained it as the true boundary between them. They adopted it by their unmistakable acts, which in any other transaction would have all the force of implied contracts. Davis v. Curtis, 68 Iowa, 63. The authorities quite generally hold that, in the absence of controlling circumstances, acquiescence in a division line, assumed or established, accompanied by actual occupancy in accordance therewith by the adjoining owners for a period equal to that prescribed in the statute of limitations within which an entry may be barred, is conclusive evidence of such an agreement. The rule will be found perspicuously stated in Sneed v. Osborn, 25 Cal. 628: 'The acts of the parties may not amount to an agreement between them to locate the tract as surveyed, and it is unnecessary to consider them in that view; but do they not show an acquiescence by the parties in those lines between the tracts of land? If they do show such acquiescence, it will make no difference in the result, that they acted in ignorance or under a mistake as to the true northern line of the northwest quarter of the Harrison tract. The authorities are abundant to the

1048

point that when owners of adjoining lands have acquiesced for a considerable time in the location of a division line between their lands, although it may not be the true line according to the calls of the deeds, they are thereafter precluded from saying it is not the true line. The better opinion is that the considerable time mentioned must at least equal the length of time prescribed by the statute of limitations to bar a right of entry.' ''

A further case that supports the theory of the plaintiffs is that of Savage v. Armstrong, 156 Iowa 473, 477, 137 N. W. 474, 476, where this court said:

''It is true, as contended for appellants, that the inference arising from ten years' acquiescence in a boundary fence and occupancy with reference to such fence as the true line may be overcome by proof of other controlling circumstances inconsistent with and contradicting the inference of acquiescence. Miller, v. Mills County, 111 Iowa, 654. But, if there are no controlling circumstances sufficient to overcome the inference from acquiescence—that is, if it does not appear that the fence maintained by the parties was so maintained with the understanding that it did not constitute the true boundary line, and occupancy has been apparently with reference to such fence as the boundary line—then the presumption from acquiescence is sufficient to determine the boundary line in controversy. Keller v. Harrison, 139 Iowa, 383. As we find no controlling circumstances such as to overcome the presumption from long acquiescence, we are satisfied that prior to the origin of this controversy the old fence had become established as the true boundary line.''

A tenant of the plaintiffs, who owned adjoining land, testified relative to the division-line fence as follows:

''My land corners with the land where the fence is in controversy. I have known the partition fence between those two forty acres of land about ever since I can remember. I was born and raised there on the place where I now live. The south fence of the Leeka land and the north fence of the Chambers land was right on the line there where it always had been. I know the fence west of it, part of which is mine and part Leeka's. * * *

The partition fence to the west and the fence between Chambers and Leekas' just east of my land runs straight through there. There is no jog or jump off of any kind. I am familiar with the fence east of the forty acres of Mr. Chambers' and the fence east of the forty acres of Mr. Leeka's a ways but not very far. * * * That fence connects with the east end of the Chambers and Leeka fence. There is no jump off or offset there.''

It is our judgment that the plaintiffs have sustained the burden of proof in establishing the claim for the line which they contend is the boundary line. This conclusion is reached despite contentions of the defendant and some testimony in support thereof.

II. It is defendant's contention that the plaintiffs agreed to a survey by an engineer. It is our judgment that the evidence does not support an agreement of this character. Even though there had been such an agreement, it is apparent from the testimony of the engineer that little credence could be given to the line claimed to have been established by him because of the insufficiency of the records which were the basis of his survey. By reason of the record as here presented, it is our judgment and holding that the trial court was correct in its finding that there had been an acquiescence on the part of the respective parties who had been owners of the land where this division-fence line had been established. We therefore affirm.—Affirmed.

All JUSTICES concur.