PAUL J. VANDER ZYL, Appellee, v. ED MUILENBERG et al., Appellants.

No. 47127.

(Reported in 29 N. W. 2d 412)

NOVEMBER 11, 1947.

REHEARING DENIED JANUARY 16, 1948.

Robert K. Brannon, of Denison, and William P. Welch, of Logan, for appellants.

T. H. Klein, of Pella, and J. H. Johnson, of Knoxville, for appellee.

OLIVER, C. J.—The south line of Lot 5, Block 87, in Pella, is the north line of Lot 6. Each lot is one hundred feet in width north and south. On the west or front end of the lots is a paved street. On the east is an alley. The land in dispute is the north eighteen and one-fourth feet of Lot 6.

Many years ago one Wheeler owned both lots and occupied a dwelling thereon. In 1906 his heirs conveyed Lot 5 to one Yarham who divided the house and moved part of it to the south part of Lot 5. There were then no improvements nor visible monuments to indicate the line between Lots 5 and 6

and the house protruded south over the line about seven feet. In 1907 Yarham conveyed the south half of Lot 5 to Joe Muilenberg, Sr., and the latter, with his family, continuously occupied the dwelling until his death in 1946.

In 1912 the Wheeler heirs conveyed Lot 6 to plaintiff Paul Vander Zyl. At that time Lot 6 and the adjacent property were part of a field of corn. A survey made for plaintiff indicated the Muilenberg house extended over their lot line and was partly upon the north portion of Lot 6. During the survey Mrs. Muilenberg, Sr., removed the stakes set by the surveyor in the land occupied by the Muilenbergs and required him to leave. Whether plaintiff was present at this occurrence is in dispute but he admits it was brought to his attention.

Later in the same year plaintiff constructed his dwelling upon Lot 6. Dirt was hauled in to fill Lot 6. However, when plaintiff's employee attempted to move dirt in the part of Lot 6 (north eighteen and one-fourth feet) claimed by the Muilenbergs, Mrs. Muilenberg ordered him to desist and he did so. There was no further attempt to grade or fill that part of Lot 6. Plaintiff disputed testimony that he was then present but admitted he knew Mrs. Muilenberg stopped the work on the north part of Lot 6. He testified he did nothing about it— was too busy to think about the extreme end of his lot—it was not in his way—the job was completed. This left a depression or little ditch immediately north of plaintiff's terrace and running from the west to the front of Lot 6 about eighteen and one-fourth feet from the north side of the lot.

Since about 1912 Muilenberg, Sr., maintained a garden on the east end of the north part of Lot 6. Immediately south of that garden was a garden maintained by plaintiff. The two gardens were separated by a path which ran east and west from the alley and along the depression. This path and depression, which defendants contend mark their south boundary, are eighteen and one-fourth feet south of and parallel to the north line of Lot 6. Plaintiff testified the path between the two gardens was there only during the garden season and that each year it was plowed and no two years was it the same. However, a neighbor who took over the Muilenberg garden

upon the death of Muilenberg, Sr., in 1946, testified the path had always been there until the man who plowed the Muilenberg garden for the witness, in 1946, "got too far south" and "plowed it, or just throwed the dirt over." Other witnesses testified Muilenberg, Sr., had dug out the path and always maintained it.

The Muilenbergs also erected and maintained a grape trellis east of their house. The south end of this trellis extended to the pathway in question. Plaintiff planted some fruit trees on Lot 6. None of these was north of the depression. He testified they were in a line very near its center—"maybe a little to the south."

In 1926 the city of Pella paved the street in front of the lots and required adjacent property owners to connect with the water and sewer lines in the street. The pipes for the Muilenberg house were run underground from the street through the strip now in dispute, nearly along the line of the depression. About 1933 the Muilenbergs constructed a garage, part of which was upon the strip in question or in the alley immediately to the rear thereof.

Prior to 1912 the Muilenbergs had maintained a lawn on the west end of the property claimed by them. Members of their family testified they continued to maintain the lawn beside and in front of their house and south to the ditch or depression and that they also removed the snow from the sidewalk in front. Plaintiff-Vander Zyl and his sons testified they (the Vander Zyls) mowed part of the lawn on the strip in question and cleared snow from the sidewalk. However, there was much uncertainty and self-contradiction in the testimony of the Vander Zyls. A neighbor and his wife, testified Muilenberg, Sr., cared for this lawn:

"I only saw Vander Zyl and his son shovel snow just to that low place and I never saw them shoveling snow north of that trough or low place. I saw them mow grass. I saw the youngest boy. He done it twice after the stakes was set there, which was after the death of Mr. Muilenberg. Before that time I never saw any of them mow any of the lawn."

Defendants are the heirs at law (sons and daughters) of Muilenberg, Sr., who died in May 1946. This action was instituted the following month. Its activating cause is indicated by plaintiff's amended and substituted petition filed July 2, 1946, which alleged the Muilenberg house encroached approximately eight feet on Lot 6; that when plaintiff purchased Lot 6 (in 1912) and as a part of that transaction, he granted Muilenberg, Sr., oral permission that the house remain there during Muilenberg's life, and Muilenberg ratified and acquiesced in said permit; that defendants were renovating and repairing the house and were excavating in Lot 6 for a private sewer connection. Plaintiff prayed an injunction restraining such acts and that his title be quieted. A subsequent amended and substituted petition merely alleged plaintiff owned Lot 6, acquired title by deed and by adverse possession and defendants made some claim adverse to his title. It asked that his title be quieted and for general equitable relief. Defendants pleaded adverse possession and acquiescence in the boundary claimed by them. The judgment of the district court quieted plaintiff's title to Lot 6, ordered defendants to remove the parts of their house and garage thereon and restore the soil to its original condition, permitted defendants to remove their water pipes and sewer connections and restore the soil, and authorized plaintiff to institute action under chapter 560, Code of 1946, if defendants' buildings and pipes were not removed May 1, 1947.

I. We conclude the record requires a finding the Muilenbergs have had possession of the north part of Lot 6 to the boundary claimed by them since 1912 or prior thereto. Plaintiff contends this was under temporary license or permission granted Muilenberg, Sr., by plaintiff. In support of this contention a son of plaintiff testified Muilenberg, Sr., admitted he did not own any part of Lot 6 but that he had made an agreement with plaintiff about the line. It has been said such testimony should be cautiously received and is of little weight. Benson v. Custer, 236 Iowa 345, 358, 17 N. W. 2d 889; Boeck v. Milke, 141 Iowa 713, 718, 118 N. W. 874, 120 N. W. 120; 31 C. J. S., Evidence, section 266. Here the conversation was

casual, had occurred twelve years previously, and Muilenberg, Sr., had since died. Moreover, the evidence of this witness upon some other propositions was so confused and contradictory as to further impair this testimony.

There was testimony also that when the street was paved in 1926, Muilenberg, Sr., asked plaintiff's wife about connecting up with the water main or the sewer and she referred him to plaintiff. One of plaintiff's sons, who was ten years old in 1926, testified he heard Muilenberg, Sr., in 1926 ask plaintiff if he could cross plaintiff's yard and put in the water pipe.

If this be considered an admission that the depression was not the boundary, it does not square with the conduct of the parties nor with ordinary conduct. No good reason appears why the pipes could not have been brought from the street through the south half of Lot 5 to which Muilenberg had the record title. Such pipes are regarded as permanent. Ordinarily, people do not place them in a temporary location in preference to a convenient permanent place. That the pipes were thus located would furnish the basis for an inference such location was regarded as permanent. Likewise, the making of other improvements upon the strip, by Muilenberg, were acts characteristic of an owner rather than those of a mere licensee who owns adjoining property upon which such improvements could conveniently be placed.

When the Muilenberg garage was constructed in 1933, both parties must have known part of it was south of the south line of Lot 5. The absence of objection by plaintiff or question by either party warrants the inference both considered it proper for Muilenberg to so locate a building, which may be said to be a permanent improvement. Moreover, if Muilenberg had only plaintiff's permission to keep his house on the edge of Lot 6, it would seem improbable that plaintiff, without protest, would have permitted Mrs. Muilenberg to drive his employees from the north part of Lot 6 and prevent plaintiff's improvement of the same. It is undisputed that plaintiff did not thereafter attempt to extend any of his improvements across the boundary marked by the depression and path. Plaintiff graded

his land to that dividing line only and all of the trees planted by him were south of that line.

The only disagreements over the boundary were on the two occasions in 1912 when Mrs. Muilenberg required plaintiff or his employees to depart and cease invading it. The evidence indicates that thereafter for thirty-four years plaintiff and Muilenberg, Sr., recognized and acquiesced in the boundary marked by the depression and path. During this long period the parties lived in neighborly amity, each family occupying its property to said dividing line. Apparently the boundary was not questioned until after the death of Muilenberg, Sr., in 1946.

█ The rule here applicable is thus stated in Concannon v. Blackman, 232 Iowa 722, 724, 6 N. W. 2d 116, 117:

"It is well settled in this state that where two adjoining owners for ten years mutually acquiesce in a line, definitely marked by a fence or in some other manner as the dividing line between them, such line becomes the true boundary, although a survey may show otherwise and neither party intended to claim more than called for by his deed. Sieck v. Anderson, 231 Iowa 490, 497, 1 N. W. 2d 647, 650, and citations; Thompson v. Schappert, 229 Iowa 360, 363, 294 N. W. 580. Of course, the line must be mutually acquiesced in as the boundary line by both parties, and not merely by one owner. Patrick v. Cheney, 226 Iowa 853, 856, 285 N. W. 184; Benjamin v. O'Rourke, 197 Iowa 1338, 1341, 199 N. W. 488; Dwight v. City of Des Moines, 174 Iowa 178, 183, 156 N. W. 336."

See, also, Leeka v. Chambers, 232 Iowa 1043, 6 N. W. 2d 837.

█ II. Plaintiff places considerable reliance upon the circumstances that he paid the taxes and special assessments for all of Lot 6 and Muilenberg paid no taxes on the part occupied by him. We have held payment of taxes is not essential to the acquisition of title by adverse possession. Wallis v. Clinkenbeard, 214 Iowa 343, 347, 242 N. W. 86. We have also held evidence that a claimant did not see that land was properly assessed may be considered as bearing on his good faith. Keller

80

v. Harrison, 139 Iowa 383, 389, 116 N. W. 327. The record indicates Muilenberg, Sr., drew Old-Age-Assistance payments for some years prior to his death and that for some years the taxes on Lot 5 were suspended. Although this indication of inability might not excuse his failure to pay taxes on the strip claimed, the entire record satisfies us of the good faith of his claim to the land north of the division line here in question.

We hold the boundary line claimed by defendants was established by acquiescence.—Reversed.

BLISS, HALE, GARFIELD, MANTZ, MULRONEY, SMITH, and HAYS, JJ., concur.