FRANCIS J. OLSON et ux., appellees, v. HAZEL CLARK et al., appellants.

No. 50279.

(Reported in 109 N.W.2d 441)

1134

JUNE 13, 1961.

REHEARING DENIED AUGUST 14, 1961.

John D. Beardsley, of Onawa, for appellants.

Crary & Huff, of Sioux City, for appellees.

THORNTON, J.—Plaintiffs bring this action to quiet title to high bank and accretion land along the Missouri River. They describe their land by metes and bounds. Defendants deny only the west boundary. The trial court granted the relief prayed thus establishing the west boundary as claimed by plaintiffs. Reference to the parties will hereinafter be in the singular.

The land involved is located in Section 28, Township 85 North, Range 47, West of the 5th P.M. in Monona County and lies along the Missouri River. The high bank land in controversy is a small triangular tract commencing at the quarter corner between Sections 21 and 28, thence West 112.62 feet to the high bank, thence Southeasterly along the high bank to the West line of the Northeast Quarter of Section 28, thence North to the quarter corner. Plaintiff contends the west boundary commences at the point of intersection of the high bank with the section line between Sections 21 and 28. (This is the point 112.62 feet West of the quarter corner above mentioned.) Thence South 33° 23' West 329.80 feet, thence South 45° West 1792.90 feet to the present high bank of the Missouri. Defendant contends the west boundary is as follows: Commencing at the Northwest corner of the Northeast Quarter of Section 28-85-47 (this is the quarter corner above mentioned), thence South 1860 feet, thence Southwesterly at a 45° angle for 1500 feet. It was agreed by the parties that the angle from the land in question over to the river should be South 45° West, that the question remains where the angle should commence.

Plaintiff's evidence is that he went into possession of land bought by him in Sections 28 and 27 east of the triangular piece in 1919. And at that time he went into possession of the triangular tract and farmed it continuously to the time of trial along with other land to the east. Plaintiff does not claim record title to the triangular tract. In 1922 plaintiff put in a fence along the west line now claimed by him down to the water's edge. This fence has been maintained and extended to the water's edge as the river moved to the south either naturally or as the government engineers changed the channel to stabilize the river. The southerly 1792.90 feet was erected in 1959 South 45° West.

■ I. Defendant contends plaintiff's evidence neither establishes adverse possession nor acquiescence in the 1922 fence as a boundary. We believe from a consideration of the whole record plaintiff has proved acquiescence in the fence as a boundary. This action is in equity and our review is de novo. The burden of proof rests on plaintiff and his proof as to the claimed boundary being acquiesced in for ten years or more must be clear. Trimpl v. Meyer, 246 Iowa 1245, 1248, 71 N.W.2d 437, 438. The Trimpl case states the Iowa rule on acquiescence, at page 1248 of 246 Iowa, at page 438 of 71 N.W.2d, as follows:

■ "* * * Where two adjoining owners for ten years or more mutually acquiesce in a line, definitely marked by a fence or in some other manner as the dividing line between them, such line becomes the true boundary although a survey may show otherwise and neither party intended to claim more than called for by his deed. Minear v. Keith Furnace Co., 213 Iowa 663, 666, 239 N.W. 584, and citations; Concannon v. Blackman, supra, 232 Iowa 722, 724, 6 N.W.2d 116, 117, and citations; Vander Zyl v. Muilenberg, 239 Iowa 73, 79, 29 N.W.2d 412, 415; Eggers v. Mitchem, supra, 239 Iowa 1211, 1216, 34 N.W.2d 603, 606. See also Atkins v. Reagan, 244 Iowa 1387, 1390, 60 N.W.2d 790, 791; Petrus v. Chicago, R. I. & P. R. Co., 245 Iowa 222, 228, 61 N.W.2d 439, 442. Many other Iowa decisions which recognize this rule are cited in the annotation 69 A. L. R. 1430, 1491, 1492, supplemented in 113 A. L. R. 421, 432."

■ II. The situation of the parties as to being adjoining owners is unique. Neither claims record title to the triangular tract. Plaintiff has farmed and fenced the same and there is some evidence he paid taxes thereon and the accretion thereto. Defendant claims some right therein by virtue of the claimed 1936 agreement dividing the accretion land. From the record it appears plaintiff owns land in Sections 28 and 27 lying east and southeast along the high bank. Defendant owns land in Section 21 lying northwest along the high bank. However, the failure of either to hold record title here would not defeat the acquiescence in the boundary line if it is otherwise proved. Either party could gain title to land held by record title by the other upon such proof. See authorities last above cited and

Leeka v. Chambers, 232 Iowa 1043, 6 N.W.2d 837, and Morley v. Murphy, 179 Iowa 853, 162 N.W. 63. If others have rights here they are in no way affected.

III. Plaintiff's evidence as to the building and maintaining of the fence is clear and that he claimed ownership of the land up to the fence is equally so. The claim of ownership to a line or fence implies that is the boundary claimed, that that is the point or line marking the limits of his land. We do not think plaintiff's testimony on cross-examination that the fence was built "to keep my cattle from going around" and "I didn't decide it [where to put the fence] I just put it in" shows an intent on his part that the fence was a barrier only to turn cattle. The whole import of his testimony is that he claimed ownership of the land to the fence and this was the boundary between his land and that of defendant. See Kotze v. Sullivan, 210 Iowa 600, 603, 231 N.W. 339, and Fullmer v. Beck, 105 Iowa 517, 520, 75 N.W. 366. Six witnesses in addition to plaintiff testified to the existence of the fence for well over the statutory period. They also testify to the farming of the triangular tract with the land to the east and pasturing the accretion land south and west of the high bank.

The farming activities west of the quarter corner between Sections 21 and 28 to the edge of the high bank are substantiated by Exhibit 39, an aerial photograph taken in 1949. The existence of the fence claimed for over the statutory period is substantiated by Exhibit 34, a picture showing the trees growing around the wire. There is undisputed evidence it would take all of 20 years for wires to be imbedded in the trees as shown in Exhibit 34.

The evidence of defendant's witnesses is that they did not see this fence until 1959. The one defendant to testify did say, "There has been a fence from the corner of Section 28 extending west to the high bank part of the time." This is the fence along the east-west road on the north side of the triangular tract. The west end of this fence forms the corner with, and is, the north end of the boundary line fence going south and west through the accretion land. This defendant also stated he had never seen any crops on the triangular tract. The witnesses for de-

fendant testified to the same effect but qualified to the extent if the fence existed or there were farming operations on the triangular tract they had not noticed them.

This testimony of defendant goes to notice or knowledge of plaintiff's claim of the fence as a boundary. Acquiescence which will establish a boundary line is consent inferred from silence, a tacit encouragement involving notice or knowledge of the other parties' claim; it exists when a person who knows that he is entitled to impeach a transaction or enforce a right neglects to do so for such a length of time that under the circumstances the other party may fairly infer he has waived or abandoned his right. Atkins v. Reagan, 244 Iowa 1387, 1390, 60 N.W.2d 790, 791, and citations. However, mere denial of the existence of the fence or of plaintiff's claim thereto will not defeat his claim if the circumstances are such that defendant should be required to take notice thereof.

Here the accretion land is covered with trees and brush and is used only for pasture. A fence through this land is not readily discernible from the road, but the starting point at the road is. The farming operation is readily discernible. A landowner is charged with more than a glance from the road. The denials of knowledge by defendant are not convincing. This is particularly true here because the defendant who did testify had not lived in the immediate vicinity for years, though he did frequently return for hunting and fishing. His brother, one of the defendants who lived on and farmed their land in Section 21 and had since 1937, was not a witness. His absence was not explained. His knowledge of the activities of plaintiff and the location of the fence should have been greater than any witness called by defendant. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 725, 107 N.W.2d 85, 96.

Under the circumstances presented the defendants had such knowledge as to put them on notice of plaintiff's claim and they have remained silent for the statutory period. The circumstances are such that an agreement ought to be implied. Leeka v. Chambers, 232 Iowa 1043, 6 N.W.2d 837, and citations.

The circumstances here differ from those in Petrus v. Chicago, R. I. & P. R. Co., 245 Iowa 222, 227, 61 N.W.2d 439, 441,

where the claimant recognized at least some right in the defendant in negotiations within a year or two before trial. They likewise differ from the circumstances in Benjamin v. O'Rourke, 197 Iowa 1338, 1341, 199 N.W. 488, where the fence had since disappeared and there was no showing the then owner had notice or knowledge of the erection of the fence. The circumstances here differ widely from those in Dwight v. Des Moines, 174 Iowa 178, 156 N.W. 336, where the fence claimed as a boundary had been moved by the defendant before the plaintiff acquired ownership and at least ten years before the action was commenced.

IV. Defendant contends that in 1936 his predecessor in title and plaintiff, together with other riparian owners, agreed to a division of the accretion lands and caused a plat to be made and filed showing such division. The plat is Exhibit 36 in this record and is referred to as the Fairchild Plat. Defendant also contends that a fence was built by plaintiff along the line contended for by defendant.

Exhibit 36 was introduced in evidence by defendant upon the cross-examination of plaintiff. No explanation or comparison of it with plaintiff's Exhibit 1 or plaintiff's Exhibit 40 is made by a surveyor or engineer. Plaintiff's Exhibit 1 is a plat showing the fence claimed by plaintiff. It is explanatory of plaintiff's claim, prepared by a civil engineer in June of 1959 under the direction of plaintiff. The plat shows the section lines, monuments, high bank and data relative to the river. Exhibit 40 is a copy of the original land survey of 1853. Exhibit 36 shows the high bank line intersecting the section line between Sections 21 and 28 at the quarter corner, or it shows, as urged by plaintiff, the line claimed by defendant as starting at the intersection of the high bank with the section line west of the quarter corner. (This would be the same starting point claimed by plaintiff.) (Exhibit 36 does not show quarter corners.) Using the center of the section as shown on Exhibit 36 as a starting point and taking the measurements as shown we believe Exhibit 36 shows the high bank intersects the section line at the quarter corner. This eliminates the triangular tract entirely. Exhibit 1 shows the high bank intersecting the section

line 112.62 feet west of the quarter corner. Exhibit 40 shows the high bank intersecting the section line 5.98 chains or 394.68 feet west of the quarter corner. No witness testified the triangular tract does not exist. The testimony of defendant and his witnesses referring to Exhibit 36 to determine the starting point of the fence claimed by them is confusing and not convincing.

█ Plaintiff concedes he paid his share of the cost of Exhibit 36, that he received a copy and knew it was filed in the recorder's office. He denies he agreed to the line as shown on Exhibit 36 and claimed as the agreed line by defendant. There is no direct evidence he did so agree. One of defendant's witnesses testified to a conversation between plaintiff and the witness's father at the time of the making of Exhibit 36, wherein plaintiff was seeking the aid of the witness's father in getting the lines changed from a 45° angle from the high bank. This is inconsistent with the line claimed by defendant, one straight south for 1860 feet and then South 45° West. Assuming the starting point at the high bank, the angle South 45° West would have left undisturbed the triangular tract, and allowed the plaintiff much of the land now claimed by defendant, but not quite the amount claimed by plaintiff. This conversation is not inconsistent with plaintiff's claim there was no agreement.

The testimony of defendant and one witness relative to the fence being built along the line now claimed by defendant is not convincing. On direct examination defendant states the fence started at the high bank and, using Exhibit 36, at the quarter corner both on direct and cross-examination. He at all times recognizes the existence of the triangular tract. Defendant's witness to the building of the fence is indefinite. He too recognizes the existence of the triangular tract and farming operation thereon by plaintiff. To be consistent with defendant's claim the fence would have cut off farming operations on the triangular tract from the operations on plaintiff's land to the east. If it were farmed, it would have been necessary to enter the tract through a gate or from the road. There is no testimony to this effect. We are convinced defendant and his

witnesses are mistaken as to the claimed agreement and building the fence as they claim.

On the whole record plaintiff has proved acquiescence on the part of defendant in the fence claimed by plaintiff starting at a point 112.62 feet west of the quarter corner between Sections 21 and 28 and extending South 33° 23' West 329.80 feet. From that point to the new bank of the river the line is South 45° West 1792.90 feet in accordance with the stipulation of the parties. That they may so agree see Todd v. Murdock, 230 Iowa 1121, 300 N.W. 284, and Cheshire v. McCoy & Henry, 205 Iowa 474, 218 N.W. 329.

In argument here defendant contends some of the land between the high bank and the present bank of the river is not accretion land but is under water. We do not find this contention was urged in the trial court. Defendant's evidence indicates he considered the land as accretion land. Here again if the rights of others are involved they are not affected.

V. In this action we have taken judicial notice of a patent from the Government to the land involved dated June 10, 1856, and recorded in Monona County in December 1960, after this case was tried and appealed to this court. We have this power where the proof goes to an indisputable fact. 3 Am. Jur., Appeal and Error, section 835, page 379. However, the practice is not approved. The patent could and should have been obtained in time to present to the trial court.

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.