## CHANDLER v. KEELER ET AL.

1. **Tax Sale**: EVIDENCE: REGISTER. The tax sale register is admissible in an action for possession under a tax deed, to show that the alleged sale did not take place upon a day to which the sale had been adjourned. *Semble*, that it is also admissible for the purpose of showing fraud in the sale.

2. ——: WHEN THE OWNER'S TITLE IS DEFECTIVE. A party in possession under a claim of title is authorized to defend against an alleged tax sale, even though the record of his title may be deficient.

3. ——: SALE IN FACT: TIME OF. To sustain a tax title, there must not only have been a sale in fact, at which the land was publicly offered, but it must have also taken place upon a duly appointed day for the purpose.

*Appeal from Keokuk District Court.*

THURSDAY, OCTOBER 4.

ACTION at law to recover the possession of certain real estate, the plaintiff's title being based on a tax deed.

Among other defenses the defendants answered: "That said lot was not sold at tax sale, there being no sale in the

month of November, 1870; that there was a pretended sale only, in pursuance of a corrupt and fraudulent agreement by and between the treasurer and W. D. Merriam, agent and son of S. N. Merriam, in pursuance of which over 400 tracts of land were sold in bulk to said W. D., in the name of said S. N., at a single bid; that said tracts were not read over separately by the treasurer, but were bid in by the said W. D. at a single private bid, including the lot in controversy; that the auditor of said county was not present, or represented by any one, and that the sale was secret and fraudulent, to defraud the owners; that prior to the sale the owner had called on the treasurer to pay all taxes on said lot, was told none were due, and relied thereon."

There was a trial by jury, verdict for the defendants, judgment, and plaintiff appeals.

*Woodin & McJunkin*, for appellant.

*Mackey & Donnell*, for appellee.

SEEVERS, J.—I. Against the objection of the plaintiff, the tax sale register was introduced in evidence as tending to

1. TAX SALE: show fraud, and that it failed to show any adjourn-
evidence:
register. ment of the sale from October 3d to November 3d, 1870. Such register showed a sale at the latter date of five town lots to one party, two to another, and then 425 descriptions of land, including the lot in controversy, to S. N. Merriam, each tract with its price opposite its description, and then follows the sale of thirteen lots to B. B. Jacobs.

The register undoubtedly was admissible for the purpose of showing that it did not show an adjournment of the sale from October 3d to November 3d. While it may not be essential to the validity of the sale to show that a record had been made of the adjournment, still, it was eminently proper such an entry should have been made on the register of sales, and the fact that no such entry appeared thereon is a circumstance tending to show that there was no such adjournment. We are also of the opinion that the register was admissible on the question of fraud, but whether it tended materially to sustain

such issue may be doubtful. Whatever error there may have been (if any) in admitting the book for this purpose, was error without prejudice, because the court, in the fifth instruction, told the jury that "the fact that the lot was not offered separately is immaterial, and should not be considered, unless it be as bearing on the question of fraud, and this is not sufficient, even though large tracts were sold in a lump, and not separately, to justify the jury in finding that the alleged sale was fraudulent."

The appellant objects to this instruction, but we think he has no reason to complain. It is fully as favorable to him as he has a right to ask.

II. The following instruction is objected to:

"4. Upon the question of the title of the defendants, you are instructed that it is sufficient if you find that they were in possession of the same, and as a matter of right were entitled to such possession, with such an interest and right as could be enforced, even though the same may have been defective by reason of the loss of a deed or other defect. If they or their grantors were in fact the owners of the land it is sufficient, even though their chain of title is shown to have been at the time of the alleged sale deficient."

2. ——: when the owner's title is defective.

The grounds of objection are: 1. The instruction assumes there was a lost deed, and there was no evidence so tending; and, 2. It was error to charge that possession and claim of title was sufficient. The testimony tended to show that defendants and those under whom they claimed had been in possession for some time under a claim of title. One Gladdon owned the premises in March, 1855, and the records failed to show that he had parted with such title until after the commencement of this suit. In May, 1855, one Slaydon conveyed the premises to Moore and after several conveyances such title as Slaydon had vested in Miller, to whom Gladdon conveyed in 1876. There was no evidence showing in terms that Gladdon had ever conveyed to Slaydon, but we think the foregoing evidence tended to so show and think the jury were fully warranted in so finding. If there was such a conveyance then the

defendants were in fact the owners of the legal title, but their record title is deficient. Such a title we think sufficient to enable the defendants to defend against an alleged tax title.

III. The court instructed the jury as follows:

"3. . If, however, you find that the purchaser and holder of the certificate of purchase prior to the time of the alleged 3. ——: sale in sale made a private bargain with the treasurer, fact: time of. by which he was to take the lands, and that in pursuance of such private arrangement a certificate was made out to him, without said lands ever having been offered publicly, so that competition was or could have been had, and that it was essentially and entirely private, then there was no public sale, or such a sale as would convey to the alleged purchaser the title to the same. And if you find the facts to be that there was no sale, and that the defendants had title to the land at the time of the alleged sale, or that their grantor did, then you will find for the defendants."

It is claimed that this instruction is in conflict with *Leavitt v. Watson*, 37 Iowa, 93. In that case it was held there was a sale in fact, although it may not have been made in the manner required by law, and that such a sale vested in the purchaser a valid title. The foregoing instruction is based on the theory that the sale in question was private and not public, and that no competition "was or could have been had," and that this was brought about by a private bargain between the purchaser and treasurer. That there must be a public sale was held in *Butler v. Delano*, 42 Iowa, 350. Now the manner of such public sale is one thing, and whether as a matter of fact there was a public sale is quite another thing. The foregoing instruction is based on the thought that the sale was private and not public, in matter of substance. It will not do to say that a sale at any time and in any manner, that is made privately by collusion between the treasurer and purchaser, constitutes a valid sale. In one sense such a sale might be called a sale in fact. But is not such a one as is contemplated or recognized by the statute. It seems to be assumed by counsel that the only objection to this sale was that it was not made on a legal sale day. In fact counsel seem to assume that it

was made on such a day. But under the evidence the jury were warranted in finding that it was not made on such a day and that the sale was private and not public. The verdict is not against the evidence.

AFFIRMED.