ANNA RATIGAN et al., Appellees, v. PATRICK RATIGAN, SR., et al., Appellants.

**LIS PENDENS:** Purchase Pending Suit—Rights Acquired. Prin-
1   ciple recognized that he who purchases real estate pending rec-
ord proceeding to quiet title takes subject to the outcome of
such litigation.

**APPEAL AND ERROR:** Review—Presumption—Equity—Trial De
2   Novo. It will be presumed, in support of an equity decree, that
the trial court found the existence of a material fact of which
there was supporting evidence.

**EVIDENCE:** Parol as Affecting Writing—Express Trusts—Partial
3   Execution. Parol evidence, if clear and strong, is competent to
ingraft an express trust upon an absolute deed, *provided the
trust has been wholly or partially executed.* (Sec. 2918, Code,
1897.)

PRINCIPLE APPLIED: A son, married and having one
child, had lived upon, owned, and for ten years had been in the
exclusive possession and enjoyment of, a farm and the income
therefrom. He became a drunkard and heavily indebted. *For
the sole purpose of preventing the son from squandering the
farm,* the father of the son induced the son and his wife to give

him (the father) an absolute deed to the farm. Subsequently, four other children were born. The father took the deed with the oral agreement that the farm should belong to the son and wife during their lifetime, and should then descend in fee to the children. No reconveyance was contemplated, because that would defeat the very end sought to be accomplished. The son remained a drunkard, and died 11 years after the deed was given, during which time the exclusive possession and enjoyment of the farm as a home by the son and wife continued as before. After the death of the son, the same possession and enjoyment continued in the wife and children. The son and his wife, during the lifetime of the son, and the wife, after the son's death, openly and notoriously, and under a claim of right, claimed to own the farm, in accordance with said above trust agreement. The son and wife paid all taxes on the farm, and the incumbrance and interest thereon. *Held*, the act of the father in permitting the son and wife to exercise absolute dominion over the farm while he held the paper title, and the act of the son and wife in maintaining such possession and enjoyment, *were an execution of the trust*, and opened the door to parol evidence of such trust.

**TRUSTS:** Express Trusts—Evidence—Admissions of One Against Whom Trust Sought—Competency. Oral admissions of the one against whom a partially executed trust is sought to be established, to the effect that he was holding the property in trust, may be competent as *corroborating* the oral testimony of the existence of such trust.

**TRUSTS:** Express Trusts—Evidence—Declaration of One Cestui Not Binding on Others. Declarations of one joint beneficiary under a trust agreement as to real estate, denying all interest therein, are not binding on the other beneficiaries.

**ADVERSE POSSESSION:** Nature and Requisites—Unprovable Claim of Right. Open, notorious, continuous and hostile possession of real estate, under claim of right, with the express or implied knowledge of an adverse claimant, ripens into an absolute title after the lapse of ten years, *even though said claim of right originally was legally unprovable.*

*Appeal from Pottawattamie District Court.*—O. D. WHEEL-ER, Judge.

MAY 14, 1917.

REHEARING DENIED SEPTEMBER 29, 1917.

SUPPLEMENTAL OPINION ON REHEARING NOVEMBER 21, 1917.

THE appellees, who were plaintiffs below, procured the cancellation and setting aside of a deed to certain real estate which had been executed and delivered by one Patrick Ratigan and the plaintiff and appellee, Anna Ratigan, his wife, to the father of Patrick. The appeal is from the decree thus canceling.—*Affirmed.*

*John M. Galvin* and *H. L. Robertson,* for appellants.

*I. N. Flickinger, Clifford Powell,* and *Tinley, Mitchell, & Pryor,* for appellees.

SALINGER, J.—I. The investigation and decision of this appeal have been made exceedingly difficult. The original abstract for the appellants contains 37 pages; their amended and additional abstract, 124; the abstract and denial of the appellees, 37. An attack upon this last adds 6 more pages of print. When it comes to stating the issues, appellants, in effect, do no more than to refer us to pages 3 to 29 of their abstract. Of this, page 3 to 19, inclusive, mostly set forth various pleadings which were afterwards substituted for, and appear to be out of the case. The arguments presented and the citations made afford opportunity for months of work. It is impracticable to attempt an exhaustion of this presentation. We find ourselves able to reach a conclusion satisfactory to us by a consideration of the paper issue made on parts of the amended and substituted petition, undisputed or conceded matters, the evidence, some of the authorities cited, others gathered by an independent investigation, and of the decree of the trial court.

The following matters are found either by well supported findings of the trial judge or are otherwise fully established, to wit: About the first day of March, 1892, the defendant Patrick Ratigan, Sr., by deed conveyed to his son

Patrick the SW¼ NW¼, the NW¼ NW¼, and the NW¼ SW¼, Section 34, Township 76, Range 42, in Pottawattamie County, Iowa.  The son at once entered into possession of said lands under said deed, and continued to occupy the same and use them until his death, on November 5, 1913.  The son was vested with full and complete title to said lands absolutely and in fee simple.  Prior and up to December 2, 1902, he became addicted to the use of intoxicating liquors to excess, and an habitual drunkard, and the property conveyed to him by the father was, by reason of said acquired habits, in great danger of being lost and squandered by the son, who was, on account of such habits, squandering the property, or some portions thereof, and had incurred debts in what were, to one of his means, large amounts.  On December 2, 1902, the father induced the son Patrick and his wife, the plaintiff Anna, to execute and deliver to the father a deed conveying all of said lands, subject to a mortgage thereon.  This was done to prevent the lands from being lost and squandered by the son.  The sole purpose of the last conveyance by husband and wife, and of the father in receiving the conveyance, was to preserve and conserve the said lands and to save the same for the benefit of the son, his wife and their children.  At the time this last named deed was made, the son and his wife had one child, the plaintiff Catherine Ratigan, who was then an infant. Since then, four other children, also plaintiffs, have been born to them, and the youngest, John Ratigan, was four years old in October, 1914.  This suit was brought in the year 1914.

After the deed from son to father was made, the father sold 40 acres of the land, to wit, the NW¼ NW¼ of Section 34 aforesaid, to one Setz, with the consent and acquiescence of his said son.  The father received therefor the sum of $3,600, out of which he subsequently paid debts owed by his son in about $1,000, paying same out of the proceeds

of said sale, and he has not otherwise accounted for the proceeds. The said Anna Ratigan, widow, and her said children began suit to recover possession of said lands, and in the same filed their petition on the 10th of February, 1914. Pending the suit thus instituted, the defendant Patrick Ratigan, Sr., made conveyance of the land remaining to parties who appear here as interveners, and upon his conveyance, base a claim to have their title quieted.

These matters, being established, dispose of the following contentions made by the appellants, thus:

1. LIS PENDENS: purchase pending suit: rights acquired.

(a) The plaintiffs are not barred to recover in this suit on the claim of appellants that the deed from son to father, of date December 2, 1902, was made to hinder, delay or defraud creditors. That was not the purpose of said deed. The purpose for which it was made does not operate to deny to plaintiffs the relief they seek.

(b) The suit brought is not barred by the statute of limitations. The defendants and interveners deny that the plaintiffs ever had a right to sue. The plaintiffs concede that they had no such right until after the son Patrick died, which was in 1913, and they began this suit in 1914.

(e) The defendant Patrick, if indebted at all on account of the sale to Setz, owes the sum found due by the trial court, to wit, $2,600, with interest at 6 per cent thereon from and after the 5th day of November, 1913.

(d) It is contended that the conveyance *pendente lite* was meritorious and justified, because the son-Patrick had received much more from the father than the other children, who were grantees in the conveyance pending suit. Let these last conveyances have been ever so well justified, the grantees therein must stand or fall by the outcome of this suit. If that puts the title of what was last conveyed in these plaintiffs, then these last grantees can take nothing,

because their grantor had nothing to give.

II. We now reach the controverted matter. The plaintiffs assert that the deed made to the defendant Patrick Ratigan on December 2, 1902, was without consideration, and that it was agreed, in a separate writing contemporaneously made, that said land should be and remain the property of the grantors, Patrick and his wife, plaintiff Anna, during the life of said Patrick and his wife, and thereafter be the property of the children born to these two and living at the time of the death of their father. The defendants deny, of necessity, that there was such writing, and urge upon us: (a) That, to establish a parol trust in real estate, either resulting or constructive, the evidence must be clear, satisfactory and conclusive; (b) parol evidence is not admissible to establish an express trust in real estate; (c) in the absence of fraud or mistake, parol evidence is not admissible to vary the consideration stated in a deed or to change its legal effect; (d) where an express trust is pleaded and relied upon, parol evidence to show a basis for a constructive trust is not admissible; (e) that a deed is without consideration is not sufficient to ingraft a trust upon it; (f) the continuance in possession of the premises conveyed by warranty deed with the consent of grantee is not admissible to establish a parol trust in such premises; (g) the denial of the alleged trust agreement is not sufficient proof of fraud to take the case out of the statute which requires declarations of trust to be in writing; (h) a party continuing in possession of real estate, after conveying same to another by warranty deed, with the consent of the grantee in such deed, is presumed to be a tenant at will of such grantee; (i) declarations of a deceased grantor tending to contradict the legal effect of a deed are not admissible; (j) mere relationship between the parties to an alleged

*2. APPEAL AND ERROR: review: presumption: equity: trial de novo.*

trust transaction does not raise a presumption of fraud; (k) a widow is an incompetent witness to testify to communications between her and her deceased husband made during the marriage relation; (l) in a suit wherein the grantee or assignee of a deceased grantor or assignor is a party, and the surviving wife of said grantor is also a party, said wife is incompetent as a witness to testify to any personal communication or transaction between her and her deceased husband.

Grant, for the sake of argument, that all these are relevant, and correctly state abstract law. Grant further, for the sake of argument, that complaints made of reception of testimony would be, in the ordinary case, well made. These concessions eliminate much from our consideration, and subtract much from the support of the decree complained of. But manifestly it does not follow that granting what we have deprives that decree of all support. It is self-evident that the inhibition upon establishing an express trust by parol evidence is not material if the court can find that the trust was created by a writing which is in the control of the party charged with the trust. There was a claim that such is the situation here.

The trial court may well have found that there was such written declaration of trust. To be sure, it does not declare by its expressed findings that it so has determined. But that is immaterial. Findings in an appeal in a case triable *de novo* do not bind us, and their absence does not affect us. It suffices that, under the pleadings and the evidence, the relief awarded can rest upon a determination that there was such a writing. Appellant concedes that the testimony was in sharp conflict, and enough will be said in another connection to make clear that we should not interfere with such finding by the trial court. That is to say, we shall point out elsewhere why the testimony for the appellee is entitled to more weight than that which counters it.

III. Where nothing appears beyond
**3. EVIDENCE:** that A made an absolute deed to B for a
**parol as af-**
**fecting writ-** consideration recited, it is, of course, not
**ing: express**
**trusts: partial** to be doubted that the grantor may not, by
**execution.**
parol, ingraft upon such absolute deed an
agreement that the property conveyed shall be held in trust
for the grantor, and devolve upon his heirs at his death.
But that this is true is not more clear than that, if the al-
leged trust is shown to have been partly or wholly carried
out, the trust may be established in parol. The sole limita-
tion is that the proof must be clear and strong. See *Johns-*
*ton v. Jickling,* 141 Iowa 444, at 450; *Schurz v. Schurz,* 153
Iowa 187, 193. So it finally becomes a question whether
the proof here, measured by that rule, justifies the decree.

It is conceded that, at the time the deed was made,
upon which it is now sought to ingraft a trust, the plain-
tiff Anna and her said husband were in possession of said
lands, and living in a dwelling house thereon; they were
then enjoying the use of said lands and farming the same,
and continued to make use thereof as a home up to the death
of the son Patrick in November, 1913; Patrick and the said
Anna, from 1902 on, claimed to own the land, and posses-
sion thereof was open, notorious and adverse; it was main-
tained under a claim of right to own the same for use dur-
ing the life of the son and his wife, and thereafter, fee was
to vest in any children living at the decease of Patrick, Jr.
During all the time between December, 1902, and Novem-
ber, 1913, the son and wife paid all taxes assessed against
the land; the incumbrance upon the same when the deed of
December 2d was made was continued upon the land; and·
plaintiff Anna and her husband discharged interest accru-
ing thereon from time to time. Since the death of the son,
the said Anna, his wife, and his said children have occupied
said lands and have used the same and enjoyed all the in-

come therefrom, paid the taxes and the interest on said mortgage, and are still in the use, occupancy and enjoyment of the said lands.

The alleged trust agreement is that, notwithstanding the absolute deed to the father, the grantee should deal with the lands as a trustee, to the end that the son might not impoverish his wife and children. How could such trust be executed? Clearly, it would defeat it to make a reconveyance to the son while he was living, since it is undisputed that the habits which it is claimed made the trust agreement necessary continued to the time of his death. Since a reconveyance was no part of the claimed trust arrangement, its performance could be effectuated only by permitting the son and his family to use the land, to deal with it as owners in every way except to alienate or incumber it. When the father permitted such use while keeping the paper title where it was put for safety, he was executing the trust on his part. The *cestuis* were executing it by maintaining possession, cultivation, and the payment of taxes and interest on incumbrances. We are of opinion that, in such circumstances, most of the testimony complained of was rightly received; that the sole question is sufficiency; and that the trial court did not act without sufficient support in the evidence in declaring that the trust agreement claimed had been entered into, nor in holding that the time had come when the deed relied upon by the defendants should be allowed effectiveness no longer. In the very nature of things, we cannot go into an analysis of that evidence, and to do so beyond stating our conclusions upon it would serve no useful purpose. In the words of the appellants themselves, what was said and done in the office of the conveyancers when deed to the father was executed is in conflict, the plaintiff Anna relating one story, and the defendant Patrick a different one; and these were the only two witnesses present.

We do, as we should, attach some

**4. TRUSTS : ex-press trusts : evidence : ad-missions of one against whom trust sought: competency.** weight to the fact that the trial judge saw and heard these witnesses. The defendant Ratigan time and again made declarations which tend strongly to show that he deemed himself a trustee, as the plaintiffs claimed. We are not holding that such admissions will of themselves establish an express trust, where they are not made by the party charged with the trust, as a witness. See *Westheimer v. Peacock*, 2 Iowa 528. What we do hold is that such admissions corroborate the testimony of the plaintiff Anna where, as here, the doors to ordinary parol testimony have been opened because of partial or full execution of the alleged trust. Again, the possession and occupancy which the evidence shows without dispute differ utterly from what the grantee in an absolute deed would have permitted for long years. And then the sale of part of the land and paying debts of the son from the proceeds. We think all these things taken together compel us to find that the trial court did not err in holding that the preponderance was with the plaintiffs. The citation from 1 Devlin on Deeds (3d Ed.), Sec. 167, is controlling only if part of the evidence be eliminated.

We do not overlook that, in his lifetime,

**5. TRUSTS : ex-press trusts : evidence : dec-laration of one *cestui* not binding on others.** the son declared, in an application to be adjudged a bankrupt, that he had no interest in any real estate. This is a most solemn act, the effect of which we have not the least desire to weaken. If the declarant were now living, and sought to assert his own interest in these lands, we should hold him concluded by his declaration. But he, of course, is making no claim, and is not a party to this suit. Death has deprived him of whatever interest he once may

have had, as effectively as any declaration made by him in court could do. But the fact remains that his conduct in court can no more bind these plaintiffs than the declarations of one legatee or heir can bind the other. Whatever his act has done to his own rights, the plaintiff, his wife, had, under the trust arrangement, the use of the lands in question for her life, and the children had the right to the fee after the mother died. The trust arrangement was made for the purpose of preventing the son from alienating or incumbering this land, to save it for his wife and children. He had no power to take these rights from them by executing a conveyance or making a mortgage or suffering a judgment; his doing either would not affect these plaintiffs. What he might not do directly, he cannot accomplish by indirection, and his said declaration left the rights of these plaintiffs untouched, no creditors' rights being involved.

IV. But if we are in error as to this, 6. ADVERSE POSSESSION: nature and requisites: unprovable claim of right. another reason appears why we may not disturb the finding below. That there was possession and full use and occupancy for more than 10 years after the making of the deed of December 2, 1902, is undisputed and indisputable. If the defendant Patrick believed there was no trust arrangement, then he knew that parties who had no interest in the land were openly dealing with it as owners, by taking its profits and discharging the burdens upon it. There is no claim that the possession was not open, or that it was unknown to defendant. It is alleged, and we think proven, that this possession was under a claim of right, based on the good-faith belief that said trust arrangement had been entered into and was subsisting. It does not matter if it were true that such an arrangement may not here be established by parol evidence. It is not essential to the claim of right which makes the basis for title by adverse possession

that the claim shall be enforcible. See *Sater v. Meadows*, 68
Iowa 507, and *Close v. Samm*, 27 Iowa 503.   In *Quinn v.
Quinn*, 76 Iowa 565, we held that the adverse possession
could rest on a claim of right to possession by virtue of a
parol agreement between plaintiff and defendant, his fa-
ther, that plaintiff should have the land in controversy in
consideration of services performed in carrying on the farm
in pursuance of a contract to that effect.   Concede, for the
sake of argument, that the claimed trust arrangement could
not be established by parol.   Concede, if you please, that in
truth no such arrangement was ever made.   But if one
holding possession in good faith believes there was such an
arrangement, and thereunder remains in possession, openly
claiming title, the required lapse of time will ripen pos-
session on such claim into a title in the nature of a grant
by acquiescence.   Relief on the claim of title by adverse
possession is expressly made in the pleadings of plaintiff,
and we think that, upon that issue alone, the decree below
can and should be sustained.   This is so if we concede the
claim which appellants make for *McClenahan v. Stevenson*,
118 Iowa 106, 110, *Luckhart v. Luckhart*, 120 Iowa 248, 254,
*Beechley v. Beechley*, 134 Iowa 75, 81, *Walsh v. Doran*, 145
Iowa 110, 113, 114, to wit, that to establish title by adverse
possession, it must be shown that the claimant's possession
was open, hostile and notorious; that is, that the holder of
the legal title had express or implied knowledge that such
possession was adverse and under claim of right or color
of title.   If he believed that no arrangement was made
beyond that which is expressed by the deed made to him,
how can it be avoided that defendant Ratigan had express
or implied knowledge that the plaintiffs were holding in
hostility to him, and under some claim which they believed
was strong enough to overcome the deed which they knew
he had?

In our opinion, the decree and judgment below should be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.

### Supplemental Opinion on Rehearing.

SALINGER, J.—I. The trial judge found that the father of Patrick Ratigan, with the consent and acquiescence of the son, sold and conveyed to one Setz 40 acres of the tract involved in this suit, to wit, the NW¼ NW¼ Section 34; that he received therefor $3,600, out of which he subsequently paid $1,000 to extinguish debts owing by the son; and it ordered that the plaintiffs have of the said Patrick J. Ratigan, Sr., the sum of $2,600, together with interest at 6 per cent from the 5th day of November, 1913. We held that this finding was sustained by the evidence. We are asked to reconsider this holding on the claim that the evidence does not sustain this finding. The appellees counter that this claim is "now set up as the basis for the reversal of the personal judgment for the first time in this case." The record does not sustain this assertion. The very point now urged to induce us to reconsider was fairly made in the presentation on original submission.

II. There crept into our opinion a statement that the father raised the $1,000 which he applied on debts of the son out of part of the land covered by the deed from son to father, which we have impressed with a trust, and which said part the father sold to Setz with the acquiescence of the son. There is no conflict in the testimony, and plaintiff Anna Ratigan herself is one witness who makes it clear that this $1,000 was raised on the father's own land "across the road," and on an 80 which he bought from Day and Hess, and that the payment to the creditors was made about 7 years before any land was sold by the father to Setz. We find on reconsideration that this is an erroneous statement,

and that the money was raised on land which the son never owned, and that the son did not acquiesce in said sale to Setz. But this error is clearly not a prejudicial one. The trial court credited the father with this $1,000. This being done, it becomes immaterial where the father obtained the money, and whether the son consented to the sale to Setz. In either view, all the father could have was credit for what he paid for the son, and this he had.

III. It will be remembered that the plaintiffs, and not the father, Patrick Ratigan, are seeking a change in the wording and effect of the deed made from son to father. That is to say, if the deed remains as written, the plaintiffs have no title to or interest in any of the 120 acres, 40 of which were sold by the father to Setz. It follows that, though 80 acres of this 120 stand affected by a trust, it may still be true that the 40 acres sold were not so impressed. The burden was on the plaintiffs to establish the trust as to each and every part of the 120-acre tract. We held that there was such trust, influenced to a great extent by the declarations made by the father. On re-examination, we find that, while he did make many such declarations as to 80 acres of the land, whereupon the dwelling house of his son was, he never made any such as to this 40 acres sold to Setz; that as to it he always took the position that he owned it absolutely; that he qualified all his admissions by referring to the 80 acres; and that the physical condition and relation of the 40 acres to the balance of the tract is such as that a trust for the benefit of the son and grandchildren might well have been intended as to the 80 acres, and not intended as to the 40 acres. We are constrained to hold, upon this further examination, that the plaintiffs have not established their case as to said 40 acres, wherefore Patrick Ratigan, Sr., is not chargeable with the $2,600 and interest thereon with which he was charged by the trial

court, on the theory that he had sold land in violation of a trust.

The opinion will, therefore, be modified to the extent of relieving Patrick Ratigan, Sr., from liability to pay said sum to the plaintiffs, or any of them. In all other respects, the petition for rehearing is overruled, and the original opinion adhered to.

GAYNOR, C. J., LADD and EVANS, JJ., concur.