MARY T. O'NEILL et al., Appellants, v. PAULINE O'NEILL et al., Appellees.

**TRUSTS:** Express Trusts—Oral Testimony. An express trust may not be added to an absolute conveyance by oral testimony.

*Appeal from Lee District Court.*—John E. Craig, Judge.

DECEMBER 15, 1921.

REHEARING DENIED MARCH 17, 1922.

Suit in equity, instituted by Mary T. O'Neill and Margaret McCormick, appellants, daughters of John and Catherine O'Neill, to quiet title to certain real estate and personal property claimed by Pauline O'Neill, widow of Eugene O'Neill, deceased son of John and Catherine O'Neill, and the minor children of Eugene O'Neill, and A. L. Parsons, administrator of the estate of Eugene O'Neill. The court dismissed plaintiffs' petition, and on cross-petition quieted title to the property involved in appellees. The appeal is from such decree.—*Affirmed.*

*Hughes & Dolan,* for appellants.

*W. C. Howell* and *A. L. Parsons,* for appellees.

ARTHUR, J.—Prior to April 22, 1908, John O'Neill was the owner, and had been for a number of years, of Lot 6 in Block 21 of Reid's Addition to the city of Keokuk, upon which there was a two-story brick building, the upper story of which was used and occupied by John O'Neill and Catherine O'Neill and their family, which consisted of five boys, John, Terence, Eugene, Edward, and Charles, and two daughters, Mary T. O'Neill and Margaret McCormick, appellants. At said date, all of the children except John were at home with their parents, living in the second story of the building. At the time, John O'Neill, the father, was engaged in carrying on a retail mercantile business in the lower story of the building.

On April 22, 1908, John O'Neill and his wife, Catherine, conveyed the real estate, by warranty deed, for a "consideration of one dollar and other valuable consideration," to their son, Eugene O'Neill, and also turned over and delivered to Eugene O'Neill the stock of merchandise located in the first story of said building. Catherine O'Neill, wife of John O'Neill, died in 1909. Eugene O'Neill died September 27, 1918. John O'Neill died June 10, 1919. The children of John O'Neill and Catherine

were all living when Catherine O'Neill died, and were all living when this cause was tried, except Eugene, who died September 27, 1918.

The reason for the transfer of the real estate and stock of merchandise to Eugene, as alleged by appellants, was to save the property from being wasted and squandered by John O'Neill, who had become, and was at the time, addicted to the use of intoxicating liquor. Catherine O'Neill was, at the time, in failing health, and seeing that the liquor habit was increasing with her husband, and fearing that he would squander and waste the property by dissipation, she induced him to convey the property (in which conveyance she joined) to their son Eugene, who possessed habits of sobriety and industry superior to those of his brothers, who were somewhat addicted to drink.

In their petition, appellants allege that conveyance of the real estate and transfer of the stock of merchandise were made in pursuance of a verbal trust agreement whereby Eugene O'Neill was to hold, and did hold, the property in trust for the use and benefit of the said John O'Neill and his wife, during their lifetime, and whereby it was then to descend to his two daughters, appellants; and that there was a further condition that those members of the family of John O'Neill and Catherine who remained at home and single would be entitled to enjoy the privileges of said property as a home with their parents, and their support from the property.

It was not alleged by appellants that there was, nor did they attempt to prove, any specific agreement between John and Catherine O'Neill and Eugene O'Neill at the time the deed was made and the personal property turned over. That is, it was not alleged that, at that time, or before that time, the parents and Eugene had any talk about the transaction, wherein the parents, or either of them, said things to Eugene, and Eugene said things to them. In other words, there is no allegation or attempt at proof of any verbal agreement in terms. No writing of any kind, except the deed, was made at the time of the execution of the deed and the delivery of the personal property to Eugene, and none afterwards. To establish that Eugene received the property in trust and treated the property as a trust, appellants assert that Eugene accepted the property "intrusted" to

him, and occupied the lower story of the building in carrying on a retail business from the day he received it until his death, and that Eugene faithfully carried out, as far as he could, the conditions of trust imposed upon him when the property was delivered to him; that John O'Neill and Catherine O'Neill, and their children, so long as they remained single, used and occupied the second story as their home, and received their support from the mercantile business carried on by Eugene; that they from time to time received money necessary for their situation in life from the income of the business, and received from the business whatever sums of money they needed for their personal use; that all of the children, while single, enjoyed the use of the premises as their home, and obtained their support from the income of said property, without objection from Eugene; that, after Eugene married Pauline, one of the appellees, he brought her to live on the premises, and both became members of the family of the elder O'Neills, and lived with them up to about a year prior to the death of Eugene O'Neill, when they moved to a home of their own; that Eugene O'Neill admitted and declared, on numerous occasions, that he did not own the property; that these declarations and admissions were made at such times and under such circumstances that he, in his lifetime, would have been barred and estopped thereby; and that his widow and heirs and legal representatives are now estopped and barred from claiming any interest in the property, by reason of such declarations and admissions. Appellants claim that, by reason of Eugene's carrying out, as long as he lived, the conditions and provisions imposed upon him by his father and mother in reference to the property "intrusted" to him, in connection with the declarations and admissions made by him concerning the property, appellees are estopped from claiming that appellants are not the absolute and unqualified owners of the property, real and personal, delivered to Eugene by his father.

Another piece of property is involved, Lot 1 in Block 20 of Reid's Addition to the city of Keokuk, of the value of about $2,000, which appellants averred was purchased and paid for with money which was derived by Eugene from the proceeds or income of the before mentioned property; that the last men-

tioned property is an increment resulting from the trust alleged to be in the property on which the brick building stands.

Appellants further allege that, since John O'Neill, Catherine O'Neill, and Eugene O'Neill are dead, the provisions and conditions with reference to the property "intrusted" to Eugene O'Neill by John O'Neill and Catherine O'Neill, for their use and benefit as long as they lived, have been fulfilled, and that the title passed to appellants, who are entitled to the property free and clear of any claim by appellees, or any of them. Appellants pray a decree quieting title to both pieces of real estate, and that they be adjudged owners of the personal property of Eugene O'Neill, and that the personal property, or the value of it, be turned over to them by A. L. Parsons,. administrator.

Appellees deny that the property on which the brick building stood, and the stock of merchandise, were conveyed to Eugene in trust, and aver that, by said conveyance, Eugene became and thereafter remained the absolute owner of said real estate and personal property, and that he owned the same at the time of his death, and that the real estate passed to his widow and children, and the personal property to his administrator. They deny that Eugene admitted or declared that he did not own the said real estate and personal property, and allege that at all times Eugene asserted and defended his title to and ownership of said property, when the same was called in question or attacked; that whatever Eugene may have done in the way of support and care of his father and mother or other members of their family, his brothers and sisters, was voluntary, and arose out of his relationship to them, and not because he was under contract or any legal obligation to them; and that in so doing, he was not acting in pursuance of any contract, agreement, or other legal obligation to do so.

Appellees deny that Lot 1 in Block 20 in Reid's Addition to the city of Keokuk was purchased with the proceeds or increase of any property whatever "intrusted" to Eugene, or that said property was an increment resulting from any trust property, and allege that said property was purchased from John Burrows by Eugene with his own money and money which he borrowed to make such purchase.

Appellees allege that, Mary T. O'Neill and Margaret McCormick, appellants, being the daughters of John O'Neill, deceased, any right, title, or interest which they now claim to said property arose out of their relationship with John O'Neill, with whom they were in privity.

The record discloses that several suits were begun by John O'Neill against his son, Eugene O'Neill, and Eugene's wife, Pauline, to regain the property conveyed to Eugene. In the first suit, instituted in 1915, John O'Neill alleged that the deed of April 22, 1908, was never signed by him, or, if it was signed by him, it was void, by reason of deception practiced on him. A demurrer to the petition was sustained, and judgment was rendered thereon on March 29, 1915, in favor of defendants for costs. *Res adjudicata* is claimed for this judgment; that said judgment is a final adjudication that John O'Neill had no interest in the property; that appellants, in privity with John O'Neill, are barred and estopped from claiming to have any interest in the property. After judgment was rendered, John O'Neill amended his petition, alleging that, under an oral agreement, Eugene was to hold and manage the property in trust for the use and benefit of John O'Neill and Eugene O'Neill. Appellees claim that, by filing said amendment, John O'Neill made an election of his rights and remedies and of his claim to ownership in the property inconsistent with the claims now made by appellants, who are in privity, and that appellants are estopped from making other and different claims to the property, and are therefore estopped to maintain this action.

In 1916, John O'Neil brought an action to recover from Eugene $4,000, which he claimed was the purchase price of the property. By instituting such suit, appellees say that John O'Neill elected his rights and remedies, by declaring that the transfer of the lot and stock of groceries was a completed sale; and that the claims now made by appellants, being in privity with John O'Neill, are inconsistent and contrary to the claims in this suit; and that, by reason of the allegations made by John O'Neill in said suit, appellants are now estopped from claiming that the property was transferred to Eugene in trust, and are therefore estopped from claiming any interest in the property. Afterwards, John O'Neill began a suit, making the appellees in

this suit defendants, alleging that he turned over to Eugene, Lot 6 in Block 21, and the stock of merchandise, upon the express condition that Eugene would hold the same in trust for him during his life, and that, at his death, the brothers and sisters of Eugene would have an equal interest in the same, according to the laws of Iowa. During the pendency of that suit, John O'Neill died, leaving a will giving all of his property to appellant Mary O'Neill, and Mary O'Neill was substituted as plaintiff, and filed an amendment alleging that the property had been conveyed by John O'Neill to Eugene O'Neill "in trust for the use and benefit of John O'Neill, his wife, and two daughters, and that at his death the property would descend to Margaret O'Neill and Mary T. O'Neill, unless he made other disposition of the same." The case came on for trial, and Mary T. O'Neill and Margaret O'Neill McCormick, appellants, testified in support of the amendment; but the action was dismissed by Mary T. O'Neill, substituted plaintiff, before decision.

Appellees also filed a cross-petition alleging that, in his lifetime, Eugene O'Neill was the absolute and unqualified owner of the property involved in this action; that Eugene O'Neill died intestate on September 27, 1918, leaving surviving his widow, Pauline O'Neill, and their children, Eugene O'Neill and Mary Margaret O'Neill; and that appellee A. L. Parsons is the duly qualified and acting administrator of the estate of Eugene O'Neill,— and praying that the title to the property be quieted in appellees.

The evidence offered by appellants in support of the claimed trust was the testimony of members of the O'Neill family, Charles, Mary T., Edward, and Margaret McCormick, and of Ann Dolan, who was not a member of the family.

Charles O'Neill testified that, one time when his father was drunk, his brother Eugene asked his father why he did not sell the business to him, and his father replied: "For the rest of them to split up? I will never leave my family that way." Charles also testified that he heard Eugene say, after the notice of the first suit was served on him in 1915, "I don't know why the old man is doing this, because the place don't belong to me;" and that, after Eugene returned from the insane hospital, and shortly before he died, he said to him, "Charlie, I have wronged all of you, and if I live until the year is up, I will

rectify that wrong,—I will give the place to pa, and let him do what he will, and he will die happy." He testified:

"Eugene asked me to have father put Edward out of the building, to make better rent, and I said, 'Why don't you do it?' and he said, 'I have no right to do it.'"

Mary T. O'Neill, appellant, testified that she overheard a conversation between Eugene and his wife, Pauline, in which she claims that Eugene said to his wife, "You know the property was put in trust with me." Mary also testified that her mother said to her and Margaret:

"Mary, I am going to make a change. I know I am taking it away from your father. He drinks and gradually grows worse as he grows older, and he drinks more. You two girls must have a home."

Edward testified as to how the family lived, but nothing about the title to the property, or any declaration of ownership or nonownership by Eugene.

Margaret McCormick, appellant, who was a married daughter, testified that she heard Eugene say, at the time a notice was served on him by the sheriff of the suit begun against him by his father, that he did not see why the boys and his father were pushing and urging that suit, when he did not own the building. At another time, Margaret claims that she heard her sister, Mary, ask Eugene why he did not mortgage the building, to raise some money which he needed in the business, and that Eugene said:

"I could not do that, Mary, because it is not mine to mortgage; and if I did, father would get after me for it."

Further on in her testimony, she said that Eugene said:

"I don't see why pa is pushing this suit, because I don't own the building."

Ann Dolan testified to a conversation which she claims she had with Catherine O'Neill and with Eugene O'Neill and with his wife, Pauline O'Neill; that, before the deed was made, Catherine O'Neill asked her:

"What do you think if I would turn the place over to Eugene? that I would turn the property over to him and trust it to him until John dies, and then the girls and all of them will have a home; otherwise the saloon keepers will get it."

This testimony, on motion, was stricken out by the court; but appellants relied upon it in argument. After the deed was made, Catherine O'Neill said to her:

"Well, I can die easy. I have got everything fixed so that I know that they will all have a home as long as they live, anyhow, because Eugene will take care of it."

On cross-examination, Mrs. Dolan was asked if, on the former trial, she did not testify that "he [Eugene] always told me that his mother left it with himself for his father, sister, and younger brother, and in fact for the whole family," and she answered:

"That is all I remember: that she left it in trust for his father and sister and brother; substantially what I have told you all the time,—that is the substance of all, from beginning to end."

On behalf of appellees, Asaph Buck testified that he had a conversation with John O'Neill, soon after the purchase was made, in which John O'Neill told him that he had sold the store building and the stock of goods to Eugene, and notified him that he must not look to him, but to Eugene; and that, after that time, all bills were made out to Eugene O'Neill.

Pauline O'Neill, appellee, on behalf of appellees, testified that she was married in 1914; that they had two children, Eugene, aged five, and Mary Margaret, aged three. She specifically denied the conversations which Mary O'Neill and Margaret McCormick or Ann Dolan claimed to have had with her in regard to the property. She said that, for three months after their marriage, they lived with her people, and then moved to a house on Park Street, where they stayed for about two years. She said that, in conversation with her husband on the evening of the day the first notice of suit was served on her husband,— the first suit instituted by John O'Neill,—her husband said, "I don't see why they are doing that,—the property belongs to me;" that her husband was sent to the hospital at Mt. Pleasant in 1917, and during that time she ran the store, and before that, her husband ran the store.

J. S. Burrows testified:

"I am an attorney, and reside in Keokuk. I prepared the deed from John O'Neill and Catherine, his wife, to Eugene

O'Neill. John and Eugene came to my office, and one of them said they wanted me to draw a deed to the property from John O'Neill and wife to Eugene O'Neill. I took the acknowledgment of Mrs. O'Neill probably at her home. She was not at my office."

Burrows further testified:

"At the time I drew this deed, there was nothing said by any of the parties to me about the property conveyed in the deed being conveyed in trust."

The value of Lot 21 in Block 6 is between $3,000 and $3,500.

It will be observed that five different positions had been taken, in the effort to wrest the property from Eugene O'Neill, before the instant action was begun, none of which were consistent with the claim of an express trust in favor of appellants. The position taken by Mary T. O'Neill, after the death of John O'Neill, when she was substituted as plaintiff in the action begun by John O'Neill, comes the nearest to being consistent with the claim made in this action, but is not identical. In the amendment filed by her, she alleged that the conveyance was "in trust for the use and benefit of John O'Neill, his wife, and two daughters, and that, at his death, the property would descend to Margaret O'Neill and Mary T. O'Neill." This was qualified by the further phrase, "unless he made other disposition of the same." John O'Neill, having by his will made Mary his sole devisee, doubtless suggested the phrase, "unless he made other disposition of the same."

In the first suit, John O'Neill took the position that he never conveyed the property to his son Eugene, either absolutely or in trust. In the second suit, John O'Neill claimed that the property was conveyed by him in trust, not for these two appellants, but for himself and Eugene. In the third suit, John O'Neill alleged a completed sale, and sued to recover the sale price. In the fourth suit, John O'Neill alleged that he turned over to Eugene the property upon the express condition that Eugene would hold the same in trust for him during his life, and at his death the brothers and sisters of Eugene—not these two appellants exclusively—would have "an equal interest in the same, according to the laws of Iowa."

Whether appellants are estopped or not by reason of former positions taken by John O'Neill, with whom they are in privity, inconsistent with the claims made by appellants in the instant action, we find it unnecessary to further discuss.

It is conceded, and must be, that an express trust cannot be established by parol evidence. Such evidence is prohibited by our statutes, which were pleaded; and the testimony of Ann Dolan as to what Mother O'Neill told her is clearly incompetent. Assuming that the testimony as to declarations by Eugene tending to prove admission of the trust, and that it had been carried out, was competent, after a careful examination of the evidence offered by appellants we conclude that it falls far short of establishing that the conveyance made by John O'Neill and his wife to Eugene O'Neill was other than a complete conveyance. No direct testimony was offered to establish a trust agreement between John O'Neill and his son, Eugene O'Neill, before the conveyance, at the time of the conveyance, or afterwards. No testimony attempts to state terms of any agreement.

Viewing the record as a whole, the thought most persuasive is that the elder O'Neills had in mind to make a complete conveyance of the property to Eugene, which they did; and that Eugene would voluntarily support and care for them while they lived, which he did; and that he would also furnish a home for his brothers and sisters, and support them while they remained single, which he did. The testimony of Ann Dolan, if it should be considered competent, supports this theory, rather than any trust agreement. Ann Dolan quotes Mother O'Neill as saying to her:

"What do you think if I should turn the place over to Eugene? that I would turn the property over to him and trust it to him until John dies, and then the girls and all of them will have a home; otherwise the saloon keepers will get it."

After the deed was made, Ann Dolan quotes her as saying:

"Well, I can die easy. I have got everything fixed so that I know that they will all have a home, because Eugene will take care of it."

Catherine O'Neill did not own the property, and could make no conveyance other than her inchoate right, and could make no trust agreement with Eugene. But if her mind were to be

interpreted through the testimony of Mrs. Dolan, it is, we think, that Eugene, her dutiful and reliable son, would voluntarily, on receiving the property, support his father and mother, and also furnish a home for his unmarried brothers and sisters.

Appellants place much reliance upon the case of *Ratigan v. Ratigan*, 181 Iowa 860. There is a vital difference between the *Ratigan* case and the instant case, in that, in the instant action, there is no evidence whatever of the declaration of a trust. Appellants merely seek to invoke an inference that the trust must have arisen, from the alleged oral declaration of the claimed trustee, but furnish no evidence whatever of the existence of a contract for a trust, or any of its terms. These claimed declarations are not in corroboration of the declaration of trust testified to by anyone, but are used as a basis for argument only, that such a trust agreement can be inferred therefrom. Appellants reason backwards from some vague and uncertain statements claimed to have been made by Eugene O'Neill, and out of these attempt to conceive a trust. We are not authorized to bridge the gap made by the want of any direct competent evidence of a trust contract, by presumption or inference based on mere oral declarations claimed to have been made by the claimed trustee, or circumstances which are not inconsistent with Eugene O'Neill's ownership of the property under the warranty deed conveying the property to him. In the *Ratigan* case, the trustee did nothing more than hold the paper title, and had no beneficial use of the property. In the instant case, Eugene O'Neill took the property, and for more than 10 years ran the business, and did everything that an owner might be expected to do. Moreover, in the *Ratigan* case, the decision is not placed so much on the grounds that a trust had been established; but rather, the title to the property was quieted in the plaintiff because of the adverse possession under which the same had been held, for more than 10 years.

The decree of the court below has abundant support in the record, and should be, and it is,—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.