THOMAS WALLIS, Appellee, v. CHARLES CLINKENBEARD, Appellant.

No. 41131.

344

APRIL 5, 1932.

P. E. Roadifer, for appellant.

George H. Mayne, for appellee.

MORLING, J.—About 1881 the Missouri River shifted to the east, washing away a large portion of Section 15—80—45, including the Southwest Quarter of the Northwest Quarter, and establishing a new east bank near the east side of the section. Thereafter the river receded to the west, resulting in the formation of sand bar land where the Southwest Quarter of the Northwest Quarter formerly was, as well as in the space intervening between that and the new bank. It is the land that has by accretion replaced the Southwest Quarter of the Northwest Quarter that is here in controversy. Plaintiff was the owner of land abutting on the new bank on the east side of Section 15. He was also the owner of land abutting on the north of the Southwest Quarter of the Northwest Quarter, but when and how he acquired that land does not appear, unless it was through accretion.

In 1907, in a suit in the Federal court, to which there were very many parties, a decree was rendered in favor of two cross-petitioners, quieting title in them to a large tract of accreted land, including the Southwest Quarter of the Northwest Quarter of 15. Though the basis of the title claimed by the cross-petitioners, or the connection of the parties to that suit to the title, except that the bill of complaint alleges title in plaintiff by adverse possession, does not appear, it is not questioned in this case that the necessary and proper parties were before the court. No question as to the sufficiency or validity of that decree is raised. It is shown without dispute that prior to the decree in

the Federal court it was orally agreed between the two cross-petitioners in that case and the plaintiff in this case that plaintiff was to have the land covered by the decree which lay directly west of plaintiff's land. It was further shown without dispute that "prior to that litigation (plaintiff) had been in possession of a portion of that land." The Southwest Quarter of the Northwest Quarter of Section 15 was sold at tax sale in 1903 for the taxes of 1901 and 1902 to Ogden, and tax deed to him, dated April 10, 1911, was recorded April 11, 1911. Ogden's grantee conveyed to defendant by deed dated May 2, 1927. The abstract does not show who was the owner of the patent title, but inferentially the land was assessed in the name of such owner up to the years 1912 and 1913, when Ogden's name "was inserted." Thereafter the land seems to have been "listed in the name" of Ogden. Taxes appear not to have been paid until 1921, when the land was sold to plaintiff for taxes assessed to Ogden. Plaintiff paid taxes for 1922, 1923 and 1924 as purchaser at tax sale. In 1926 redemption was made in the name of Ogden, but the amount paid on redemption was not taken by plaintiff. The taxes for 1925 were paid by Ogden, those of 1926 and 1928 by plaintiff, and those of 1927 and 1929 by defendant.

██ Plaintiff's testimony is undisputed that he "had been in possession of the forty acres in controversy prior to the time of the decree in the United States Court. At that time it was Missouri River land growed up with brushes, willows and cottonwood, overflowing every now and then in June. In 1905 was about the first time I went out to do any work and I sold riprap willows off it in the spring of 1905 and as fast as the land dried up and I could get over it I used it for pasture. * * * I never enclosed this forty with a fence in itself but it was enclosed with other land in my pasture by a fence for the first time in 1917. I first commenced to pasture it in 1909 or 1910. * * * I pastured it two or three years then it dried up and I enclosed it within a fence in 1917. Before 1917, I just used the land in such a way as the nature of it would permit. * * * Since 1917 I have continuously used this pasture including the forty acres in controversy. I have run from 60 head of stock to as high as 400 head of cattle and horses in there. They have been in there all of the time since 1917 except two years when the river was very high. * * * About three fourths of the forty acres in controversy is

heavy timber with some natural wild grass but not very much. * * * From the time of the action in the Federal Court and down to the spring of 1927, when Clinkenbeard got his deed I was never disturbed or interrupted in my use or possession of this property and I have used it continuously since 1905. I was never served with notice of the tax deed by Rex Ogden in 1911.''

There is no evidence of any possession taken or claim made under the tax deed to Ogden except defendant's testimony that since he got his deed he had cleared off 10½ acres; that he had cut wood and brush every year since he got his deed, which as has been stated, was dated May 2, 1927. It is shown by the testimony of other witnesses as well as the plaintiff without contradiction that a large tract, including the land in controversy, was enclosed by fences constructed by plaintiff and by a ditch on the south side which prevented the passage of cattle, and was occupied by plaintiff as a pasture since 1917, and that the land had been used by plaintiff for pasture and other purposes before that time.

While plaintiff does not testify in terms, or as specifically as might be, that he was continuously and exclusively in possession as owner peaceably, under color or claim of title, in good faith, for more than 10 years, yet that such is the fact is the only conclusion that may reasonably be drawn from the record. Defendant argues that plaintiff failed to list the land for taxation, purchased it at tax sale, did not fence or use it ''in any manner that he exercised dominion over it, * * * offered no evidence of an oral deed or verbal grant such as, had it been reduced to writing, would be a grant thereof,'' acquired no title by accretion, ''furnished no evidence of actual possession upon adverse possession, * * * recognized the A. R. Ogden title, bought the land at tax sale, allowed redemption by Ogden.'' Defendant further argues that the taking by plaintiff of tax sale certificate and allowing redemption is conclusively inconsistent with the theory of right and adverse possession; that the fences surrounding a tract of different owners did not constitute evidence of possession; that occupancy without listing for taxation is not sufficient to establish adverse possession; that title by adverse possession cannot be acquired by acts ''consistent with the idea of harmless encroachment without the thought of acquiring an interest therein;'' that ''possession must be taken or improvement made or

something else done in pursuance of an agreement in parol fixing the boundary in order to render it binding on the parties;'' ''plaintiff, knowing his interest was not disclosed by the record, stood silently by and saw others in good faith discharging the obligations which, if his claim be true, the law (devolved?) upon him, and knew of the payment of taxes and of the claimant of the land, and * * * is thereby estopped * * *.''

. ██ As we have no statute making the payment of taxes essential to the acquisition of title by adverse possession, neglect to pay taxes does not preclude such acquisition. 2 C. J. 203. See Davidson v. Thomas, (Iowa) 86 N. W. 291 (not officially reported).

There is no evidence that plaintiff recognized title in defendant or his predecessors. His purpose in purchasing at tax sale might have been merely to fortify his claim to title by accretion. (Plaintiff did not accept the money for redemption.) See Kuh v. Flynn, (Neb.) 189 N. W. 280; Zweibel v. Myers, (Neb.) 95 N. W. 597.

Claim of right is distinct from claim ''under color of title.'' We have said that claim of right or ''hostile claim'' need not be under color of title. Hamilton v. Wright, 30 Iowa 480, 485; Ratigan v. Ratigan, 181 Iowa 860, 871; Goulding v. Shonquist, 159 Iowa 647, 650.

This is the general rule as respects land actually occupied. 2 C. J. 168.

But however this may be, the decree in the Federal Court is not attacked. (Plaintiff's right to claim under it only being in dispute.) That decree gave plaintiff color of title. 2 C. J. 196.

As against defendant at least, who is not in privity with the cross-petitioners in the Federal court case or to any agreement concerning that case, it is not necessary that the agreement between plaintiff and the cross-petitioners be in writing. Quinn v. Quinn, 76 Iowa 565; 2 C. J. 170; Ratigan v. Ratigan, 181 Iowa 860; Close v. Samm, 27 Iowa 503.

The undisputed evidence is that plaintiff was continuously and exclusively in possession at the time of the execution and recording of the tax deed and for more than 15 years thereafter. There is, therefore, no room for claim of constructive possession

under the tax deed. Willcuts v. Rollins, 85 Iowa 247, 250; Libbey v. Young, 103 Iowa 258.

Whether or not plaintiff in fact acquired title by accretion we are not called upon to consider. See Payne v. Hall, 192 Iowa 780. Plaintiff was in fact in possession claiming ownership at the time the tax deed under which defendant claims was executed and recorded and for more than 15 years thereafter. Plaintiff, therefore, had the right to defend against the tax sale. Chandler v. Keeler, 46 Iowa 596.

By the statute, Code, 1897, Section 1448 (Code, 1924, Section 7295) :

"No action for the recovery of real estate sold for the non-payment of taxes shall be brought after five years from the execution and recording of the treasurer's deed * * *."

This statute operates to bar an action by the holder of the tax title on the expiration of five years from the recording of the treasurer's deed. Barrett v. Love, 48 Iowa 103; Brown v. Painter, 38 Iowa 456; Hintrager v. Hennessy, 46 Iowa 600; Innes v. Drexel, 78 Iowa 253; La Rue v. King, 74 Iowa 288; Peck v. Sexton, 41 Iowa 566; Brett v. Farr, 66 Iowa 684.

In Innes v. Drexel, 78 Iowa 253, 254, it is said:

"And after five years from the time it begins to run not only is the tax title extinguished, but all rights which are dependent upon it."

The qualification annexed to the statute by the Code of 1897, "unless the owner is, at the time of the sale, a minor, * * * in which case such action must be brought within five years after such disability is removed," did not change its applicability to the owner of the tax title as settled by the decisions of this Court of long standing. Actual possession under claim of ownership and under the Federal Court decree and oral agreement made out a prima-facie case. 51 C. J. 257. Defendant, on this record, is a mere intruder, and not in position to question plaintiff's title. Keokuk & Des Moines Railway Co. v. Lindley, 48 Iowa 11, 14; Chandler v. Keeler, 46 Iowa 596; Williams v. Swetland, 10 Iowa 51, 57; Shaffer v. McCrackin, 90 Iowa 578, 581; Moore v. Kleppish, 104 Iowa 319, 322; Welch v. Jenks, 58 Iowa 694.

Defendant was a mere intruder, and so far as he appears to

have acted at all, was a mere volunteer, to whom the plaintiff was under no duty and to whom plaintiff made no representation. Upon plaintiff's action or non-action defendant had no right to rely, and did not rely. Defendant has shown no ground for the alleged estoppel.—Affirmed.

WAGNER, C. J., and ALBERT, EVANS, and KINDIG, JJ., concur.